## EWING v. MERKLEY.

A MORTGAGE OF PERSONAL PROPERTY, TO BE VALID AS AGAINST THE CREDITORS of the mortgagor, must be accompanied by a delivery within a reasonable time, followed by an actual and continued change of possession of the mortgaged property. The fact that the mortgagee retains the mortgagor in his employ, in caring for or in the selling of the property, though a badge of fraud, is not *per se* a fraud against creditors not susceptible of explanation, and which vitiates the mortgage.

APPEAL from the first district court. The opinion states the facts.

*Kimball & Heywood*, for the appellant.

*Ransford Smith*, for the respondent.

TWISS, J.:

This is an action in the nature of replevin of a building known as the Gem saloon, and its contents, consisting of a stock of liquors and cigars, billiard and pool tables, bar and

fixtures etc., alleged to have been wrongfully and unlawfully taken on the fourth day of April, 1883, from the plaintiff by the defendant while the plaintiff was the owner of, entitled to, and in possession of the same, under and by virtue of a bill of sale thereof from one Charles Blackmore to the plaintiff. The alleged value of the building and property is eight hundred dollars.

The defendant, answering, denies that the plaintiff was or is the owner of the property so replevied, or that he was entitled to or was in possession of the same or any part thereof at the time they were taken by the defendant, and says that he levied upon and took into his possession, as the property of one Charles Blackmore, the said building and goods, under and by virtue of a writ of attachment issued out of a competent court, against said Blackmore, and that he took them and every part thereof in no other way. That said writ of attachment was directed to him as constable, and that he made the levy or attachment in compliance with the directions contained in said writ and of the plaintiff therein named. That Blackmore was the owner of, and as such entitled to and was in possession, of the building and goods so levied upon by the defendant, at the time of and long prior to the levy or attachment. That the bill of sale from Blackmore to the plaintiff was wholly without consideration; and was made with the sole intent of hindering and delaying and defrauding the creditors of Blackmore, all of which the plaintiff at the time well knew.

Upon the trial, the court, at the request of the defendant, submitted certain questions at issue to the jury, and instructed them to find specially as to the same. Whereupon the jury found specially: 1. That Blackmore, prior to February 5, 1883, was the owner of the goods replevied; 2. That on the last-named day Blackmore sold all of said goods to the plaintiff; 3. That such sale was followed on the day of sale, and within a reasonable time, by an actual and continued change of possession of the goods from Blackmore to the plaintiff; 4. That Blackmore did not remain in possession of the building and goods after the sale thereof, either by himself or concurrently with the plaintiff; and 5. That Blackmore was indebted to Rubel & Penglase on the date of said sale.

The jury also found a general verdict for the plaintiff. The defendant moved to set aside the special and general verdicts, upon the ground that the evidence was insufficient to justify either, and that both of them were against law.

There is no complaint as to the charge of the court to the jury, and the only question before us is, Do the law and the evidence of the case sustain the verdict?

The testimony in the case was substantially as follows: The execution and delivery of the bill of sale, dated February 5, 1883, of the property in controversy from Blackmore to the plaintiff was duly proved by the attending witnesses thereto, and read in evidence.

The plaintiff testified that Blackmore on the fifth of February delivered to him all the property mentioned in the bill of sale; that he paid one thousand five hundred dollars for it. "There was a verbal simultaneous agreement between Blackmore and myself that I should pay a promissory note of even date of said sale for seven hundred and seventy-five dollars to Daniel McLaren, made by Charles Blackmore and myself, and I should hold said goods and chattels and run the business of the Gem saloon, and pay said note out of the proceeds thereof, and when so paid that the saloon and goods and chattels and building should be transferred by me back to Blackmore." The note of seven hundred and seventy-five dollars to McLaren, signed by Blackmore and Ewing, was read in evidence. The witness further testified: "As between me and Blackmore, I was surety on the note. The defendant took the property described in the complaint at the date therein alleged from my possession, I objecting at the time to his doing so."

On cross-examination, he said he worked for Blackmore all the time; he (Blackmore) conducted the saloon until February 5, 1883; after that date Blackmore worked for him (Ewing) in the saloon. "Don't know that there was any change in his duties, except I was boss; I employed him to work for me; he worked for me about ten days directly after February 5th, when I discharged him. There was no change in any sign or in the building. The building was known as the Gem saloon."

He made application for a United States and county license

on the sixth day of February.   He had one that expired or commenced, could not say which, on April 2d; never paid anything on the McLaren note.   Had the saloon until about May 1st.   Was to employ Blackmore for seventy-five dollars per month as long as the business would justify it; discharged him in about ten days, as the business would not justify my keeping him longer.

Daniel McLaren testified to a verbal simultaneous agreement between Blackmore and Ewing at the time the bill of sale was made; that the building and goods were to be held by Ewing, and the saloon was to be run by him until the note was paid, and then the building, goods, and chattels were to be transferred back to Blackmore.   The building was personal property.   The land on which it stood belonged to the government.   Note was my property.   Counsel for the defendant admitted that the note was given for a valid consideration, and objected to any inquiry into its consideration.  The court sustained the objection, and no evidence as to the consideration of the note was introduced.

On cross-examination, witness said Blackmore remained and was employed in the saloon about ten days after the bill of sale, and performed the same duties as before, except he changed shifts with Ewing.

Plaintiff introduced a letter signed by Edgar Merkley, constable, directed to Mr. Reinhart, dated Kelton, Utah, April 9, 1883, in which it is stated the defendant has in his possession certain property therein particularly described, including all or nearly all described in the complaint.

It was admitted by the respective parties that the value of the property described in the complaint was eight hundred dollars.

The defendant then introduced and read in evidence the complaint and writ of attachment, dated April 4, 1883, and all the other papers and the proceedings in case of *Isaac Rubel and John Penglase, Partners, etc.,* v. *Charles Blackmore,* before Julius Reinhart, justice of the peace, it being a suit for the recovery of two hundred and fifty dollars, and also judgment by confession in the case on April 7th for the amount claimed, and execution of same date, returnable April 14th, with order for sale of property of the defendant therein

named, and also evidence of service of a restraining order upon the defendant Merkley, restraining the sale of the property levied upon by him, in the case of *Rubel & Penglase* v. *Blackmore.* This service was made by the United States marshal in an injunction suit by *Ewing* v. *Merkley,* the parties to this action.

It was admitted that at the time of sale by Blackmore to Ewing, Rubel and Penglase were creditors of Blackmore.

John W. Penglase, being called and sworn for the defendant, testified that he was one of the firm of Rubel & Penglase ; that neither Ewing nor Blackmore ever gave them any notice of any transfer from Blackmore to Ewing of the property in controversy, nor did they (Rubel & Penglase) find it out until about April 24, 1883; that there never had anything been paid on the judgment against Blackmore.

On cross-examination, he said: "We never made any inquiries of the plaintiff or at the saloon about the transfer."

Julius Reinhart, called by the defendant, testified that nothing had been paid on the judgment against Blackmore.

The plaintiff, being called again, testified that at the time of the sale to him, February 5th, Blackmore told him that he had paid one half of the Rubel & Penglase debt, about two hundred and fifty dollars.

The foregoing is all the evidence in the case.

The bill of sale from Blackmore to Ewing, with the verbal defeasance made at the time of the sale and delivery of the bill of sale, and of the property in controversy, constituted a mortgage of the property, which between the parties was good; and Ewing was entitled to the possession of the property as against Blackmore until the conditions constituting the defeasance were performed.

Was the transaction, as presented to us by the evidence, such as to entitle Ewing to the property as against the existing creditors of Blackmore under our statute, which requires that "every sale made by a vendor of goods or chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by a delivery within a reasonable time, and be followed by an actual and continued change of the possession of the things sold or assigned, shall be conclusive evidence of fraud as against the

creditors of the vendor or assignor, or subsequent purchasers in good faith"?

This statute is a rule of law and of policy which purchasers of personal property must observe, or take the chances of the enforcement of creditors' claims or of subsequent purchasers in good faith.

"The validity of a sale of personal property, as between the vendor and an attaching creditor, when tested upon the question of the delivery and continued change of possession, is to be determined by the same rule, whether the sale was absolute, or made by way of mortgage to secure an indebtedness. The mortgagee of personal property, in order to place it beyond the reach of the creditors of the mortgagor, must have actual possession of the mortgaged property:" *Woods v. Bugbey*, 29 Cal. 466.

Upon the issues of delivery and continued change of possession, the court instructed the jury that "there must be a complete change of the dominion and control over the property, and some act which will operate as a divestiture of title and possession from the vendor, and transfer it to the vendee. There must be some open, notorious, or visible act clearly and unequivocally indicating delivery and possession, such as putting up a new sign, or any other reasonable means which would impart notice to a prudent man that a change had taken place. The act must be so open and manifest as to make the change of possession apparent and visible. The change of possession must be such as is observable without inquiry; on the one hand, the purchaser must see to it that he so conducts with the property as to indicate by the appearances to an observer a change in the possession; and on the other hand, the creditors of the vendor are bound to see what others can see, and judge and act upon it with the prudence that is required of men in business affairs. The change of possession must be obvious or observable, or, as sometimes expressed, visible, or such that the appearance would indicate to an observer that there had been a change. The appearance must indicate such a divesting of the possession of the vendee as any man knowing the facts which are ascertainable would be bound to know and understand as the result of change of ownership. They must be such as he could

not reasonably misapprehend. When such a change is apparent, creditors are put on the inquiry. The rule does not say that it is the duty of creditors to inquire or presume a change when it is reasonably doubtful, but that the possession in such case is joint and the sale void. This is in entire consistency with the settled rule that there must be a substantial and visible change of possession. If there is such a change, a careful observer will not be at a loss to determine who owns and has possession of the property. If it is doubtful, the law resolves the doubt against the party, who should make the change of possession open and visible to the world; creditors are not bound to inquire. It is sufficient if they carefully observe."

To this instruction there was no objection by the defendant. The jury found a general verdict for the plaintiff, and also by a special verdict said that the sale was followed, on the day of sale and within a reasonable time, by an actual change of possession of the goods from Blackmore to Ewing, and that Blackmore did not remain in possession of the building and goods after the sale thereof, either by himself or concurrently with the plaintiff.

The defendant moved the court below to set aside and vacate the general and special verdicts, and for a new trial, on the alleged grounds of the insufficiency of evidence to justify them or either of them, and that both of the verdicts are against law; which motion the court overruled, and from the order overruling the motion the defendant appealed to this court.

The fact that Ewing employed his vendee, Blackmore, as his clerk in the saloon, and that he did so act some ten days after the sale, is a circumstance, to be considered by the jury, as strongly tending to show fraud on the part of the plaintiff, or that there was no actual personal possession by him of the building and goods sold, and that his possession was at most only concurrent or joint with Blackmore. But such fact is not *per se* a fraud that admits of no explanation, or which conclusively shows that Ewing was not in the sole, entire, visible, and exclusive possession of the property: *Warren* v. *Carlton*, 22 Ill. 415. It is true, the vendee can not make his vendor his agent, and then rely upon his constructive posses-

sion. But when there is any testimony tending to show an actual and continued change of possession, then in such case the facts should be submitted to the jury with instructions applicable to the particular facts of the case: *Stephenson* v. *Clark et al.*, 20 Vt. 624; *Hall v. Parsons*, 17 Id. 271.

It is quite clear that Ewing was in possession of and had the beneficial use of the building and property, under and according to the terms of the bill of sale and its verbal defeasance; and the question is, Was there an entire visible, actual, and continuous change of possession of the property from Blackmore to Ewing? For without such a possession he can not recover in this action. Although the transaction may have been without fault as between the two parties to it, yet the law will not protect him in an obscure, joint, or qualified possession as against the creditors of Blackmore; the possession to be good against them must have been open, absolute, and actual to observers. A delivery by the vendor within a reasonable time, followed by an actual and continued change of possession—an unqualified surrender of dominion over the property as owner—a transfer of his possession to his vendee, with such palpable tokens and proofs as will carry to the mind of the ordinary observer the belief of an actual transfer and continued possession, as contradistinguished from a mere formal or pretended or temporary one, are the ultimate facts required by the statute. The employment of the vendor by the vendee as his clerk or servant in the care or sale of the property is a probative but a suggestive fact to be carefully considered by the jury, with the other circumstances in evidence, in determining the issue as to delivery and change of possession: *Godchaux* v. *Mulford*, 26 Cal. 316; *Claflin et als.* v. *Rosenbury et als.*, 42 Mo. 439; *Billingsley* v. *White*, 59 Pa. St. 464.

Whether Blackmore delivered the goods in controversy to Ewing within a reasonable time after the sale thereof, and if he did, was such delivery followed by an actual and continued change of possession, is a question of fact blended with that of law, and a proper matter for the consideration of the jury in light of all the facts in evidence, with appropriate instructions applicable to the facts in evidence in the case: *Talcot* v. *Wilcox*, 9 Conn. 134.

The bill of sale was attested by two witnesses, one of whom was the justice of the peace before whom the suit of Rubel & Penglase was brought and prosecuted, the other McLaren, the payee of the note of seven hundred and seventy-five dollars, signed by Ewing as surety for Blackmore, of even date with the bill of sale, both of whom were present at the time of the sale and of the verbal agreement and delivery of the property. The application of Ewing for United States and county licenses, made on the next day after the bill of sale, the change of shift by Blackmore and Ewing, the making of Ewing " boss " in the place of Blackmore, the dismissal of Blackmore by Ewing ten days after the transfer, the full and valid consideration for the McLaren note and possession of the property by Ewing, as testified to by him, until it was taken from him by process in this case—were all evidenciary facts, tending in a greater or less degree to show an obvious, sole, actual, and continued possession of the property by the plaintiff. There were other facts in evidence tending to weaken the effect of these with the jury, all of which were proper for their consideration. Upon all of the facts in evidence, we are not of the opinion that the district court erred in overruling the motion for a new trial: *Hestal* v. *Myles,* 53 Cal. 623.

The order of the district court overruling the motion for a new trial, and the judgment of the court, are both affirmed.

HUNTER, C. J., and EMERSON, J., concurred.