## THE PAWNEE COAL COMPANY

*v.*

## WALTER ROYCE.

*Opinion filed February 19, 1900.*

1. RELEASE—*actual fraud must be shown to avoid release of damages.* Actual, intended fraud in the procurement of a release of damages for personal injuries must exist in order to excuse a return of the consideration by the plaintiff before bringing suit and to render the release of no effect in law.

2. SAME—*when instructions upon effect of release are erroneous.* Instructions in a personal injury suit which hold that a release of damages is of no effect in law if executed by the plaintiff while so intoxicated as to be incapable of contracting, are erroneous in omitting the qualifications as to whether the defendant or its agent brought about such intoxication or had any knowledge thereof, or whether the release had been subsequently ratified or rescinded by the plaintiff.

3. SAME—*whether circumstances nullify legal effect of release is for the jury.* In all cases where a release has been executed and its effect is sought to be avoided, the circumstances of its execution and whether there is sufficient cause to avoid it, as well as whether a return of consideration therefor is necessary, are questions of fact for the jury under proper instructions.

4. APPEALS AND ERRORS—*when refusal of defendant's instruction is error.* In an action for a personal injury, where the plaintiff has previously executed a release of damages, it is error to refuse defendant's instruction that plaintiff must refund the consideration for the release before he could recover, if no instructions are given by the court touching upon that subject.

5. NEGLIGENCE—*willful violation of statutory duty by defendant excuses plaintiff's exercise of due care.* If the plaintiff's injuries are the result of a willful violation of statutory duties by the defendant, the plaintiff is not required, as essential to recovery, to show that he was in the exercise of due care.

6. MINES—*mine owner's duties do not cease with making of morning inspection.* Under section 4 of act on mine ventilation, as amended in 1895, (Laws of 1895, p. 258,) a mine owner's duty does not cease with the making of the morning examination, since the statute provides that "no person shall be allowed to enter the mine until such examiner shall have reported all of the conditions safe for beginning work."

7. SAME—*mine employee need not read examiner's report each morning.* A mine employee may rely upon the mine owner's compliance with

the statute directing that no person shall be allowed to enter the mine until the examiner has reported all conditions safe, and he is not bound to ascertain each morning whether his employer is complying with such statute.

*Pawnee Coal Co.* v. *Royce,* 79 Ill. App. 469, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

W. J. CALHOUN, and H. M. STEELY, for appellant:

Negligence is not presumed—not even from the fact that there has been an accident. It is a question of fact, and, like any other fact necessary to a recovery, it must be proven and established by plaintiff by a preponderance of the evidence. *Railroad Co.* v. *Geary,* 110 Ill. 383; *Joliet Steel Co.* v. *Shields,* 134 id. 214; 3 Elliott on Railroads, secs. 1286, 1297, 1299.

A charge of willfulness is not supported by evidence or proof of mere negligence. To constitute willfulness the act done or omitted must have been intended. *Railroad Co.* v. *Dickson,* 88 Ill. 431; *Peoria Bridge Ass.* v. *Loomis,* 20 id. 235; Shearman & Redfield on Negligence, sec. 7; *Coal Mining Co.* v. *Grogan,* 53 Ill. App. 61; *Railroad Co.* v. *Burge,* 94 Ind. 46; 4 Am. & Eng. Ency. of Law, p. 80, note 4.

If there has been an honest attempt to comply with the provisions of the statute, or if the injury is not occasioned by the willful violation or failure denounced by the statute, then there cannot be said to have been a willful violation, and in such case the statute does not apply. *Catlett* v. *Young,* 143 Ill. 74.

Where a release under seal and for a valuable consideration is fairly obtained, without misrepresentation or fraud upon the part of the party obtaining such release, it will be a complete bar to any suit brought upon such cause of action. *Kingsley* v. *Kingsley,* 20 Ill. 203; *Railroad Co.* v. *Welch,* 52 id. 184; *Coal Co.* v. *Peterson,* 45 Ill. App. 507;

39 id. 118; *Spitze* v. *Railroad Co.* 75 Md. 162; *Albrecht* v. *Railway Co.* 87 Wis. 105.

Fraud cannot exist without an intention to deceive. *Miller* v. *Howell,* 1 Scam. 499; *Warner* v. *Carlton,* 22 Ill. 415; *Nelson* v. *Smith,* 28 id. 495; *Boies* v. *Henney,* 32 id. 130; *Gage* v. *Lewis,* 68 id. 604; *Spitze* v. *Railroad Co.* 75 Md. 162; *Bowen* v. *Schuler,* 41 Ill. 192.

Neither the court nor jury have a right to infer or presume fraud. The party alleging it assumes the burden of proof, and must prove and establish the fraud, or matters in avoidance, by a preponderance of the evidence. *Packing Co.* v. *Hightower,* 9 Ill. App. 297; *Wright* v. *Grover,* 27 Ill. 426; *Strauss* v. *Kranert,* 56 id. 254; *Walker* v. *Hough,* 59 id. 375; *Sherman* v. *Bush,* 80 id. 160; *Johnston* v. *Worthington,* 8 Ill. App. 322.

One seeking to disaffirm a release because of his temporary mental incapacity at the time he executed it, caused by anæsthetics, such incapacity being entirely unknown to the other party, must not retain the fruits of his contract; and if, after regaining his reason, he learns of the release and neither returns or offers to return the money or property, he by his acquiescence ratifies the release and precludes himself from any further recovery of damages. *Gibson* v. *Railroad Co.* 164 Pa. St. 142; *Drohan* v. *Railway Co.* 162 Mass. 435.

Contracts made by a person intoxicated are voidable but not void, and to defend against a contract on the ground of drunkenness it must have been rescinded by restoring what was received as consideration thereof. *Joest* v. *Williams,* 42 Ind. 565; *McGuire* v. *Callahan,* 19 id. 128.

Drunkenness can be set up as a defense against a contract only where it was brought about by the other party, or is so total as to be palpable evidence of fraud in the person entering into a contract with the one who was intoxicated. *Burroughs* v. *Richman,* 1 Green's L. 233; *Woodson* v. *Gordon,* 14 Am. Dec. 743; *Reynolds* v. *Dechaums,* 24 Tex. 174.

ISAAC A. LOVE, and WILLIAM R. JEWELL, Jr., for appellee:

The findings of the Appellate Court are final as to facts and cannot be reviewed by the Supreme Court. *Hecht* v. *Hall,* 163 Ill. 416; *Kohn* v. *Bank,* 165 id. 316; *Railroad Co.* v. *Kennedy,* id. 496; *Lawson* v. *Bank,* 166 id. 162.

It is a positive obligation toward the servant for the master to furnish the servant a reasonably safe place in which to work, and the master is responsible for any failure to discharge that duty. *Hess* v. *Rosenthal,* 160 Ill. 621; *Railway Co.* v. *Sweet,* 45 id. 197; *Railway Co.* v. *Jackson,* 55 id. 492; *Railroad Co.* v. *Godfrey,* 155 id. 78; Cooley on Torts, 561; *Foundry Co.* v. *VanDam,* 149 Ill. 337.

Where the operator of a mine violates a provision of the statute enacted for the protection of miners, the doctrine of contributory negligence does not apply. *Catlett* v. *Young,* 143 Ill. 75; 1 Greenleaf on Evidence, sec. 483.

A willful violation of the statute is a violation of its provisions knowingly and deliberately committed. *Catlett* v. *Young,* 143 Ill. 75; 38 Ill. App. 198.

The object to be attained by the statute was to prevent injuries to persons employed in coal mines, so that negligence on their part in the manner of doing their work should not prove fatal. *Catlett* v. *Young,* 143 Ill. 75.

An honest attempt to carry out the statute is not sufficient. *Catlett* v. *Young,* 143 Ill. 75.

Willful failure is for the jury, to be determined from the evidence. *Mining Co.* v. *Phillips,* 39 Ill. App. 376.

All mines in which men are employed shall be examined every morning by a duly authorized agent of the proprietor, to determine whether there are any dangerous accumulations of gas, or lack of proper ventilation, or obstructions to roadways, or any other dangerous conditions, and no person shall be allowed to enter the mine until such examiner shall have reported all the conditions safe for beginning work. Starr & Cur. Stat. 1896, chap. 93, sec. 4; *Madison County* v. *People,* 58 Ill. 456.

When an illiterate is induced to sign a receipt, believing it to be something else, he need not return the money thereon before bringing suit. Cooley on Torts, 590, note 3; *Gibson* v. *Railroad Co.* 164 Pa. St. 142; *Gilman* v. *Barry*, 59 N. H. 62.

When there is a disaffirmance of the contract because of fraud, the injured party may in some cases bring his action without re-paying or offering to re-pay the money received on the fraudulent contract. In such case the money is retained, not as part of the consideration of the contract which he denies, but as part indemnity for the fraud perpetrated. *Gibson* v. *Railroad Co.* 164 Pa. St. 142.

When a party has received serious personal injury through negligence of another, and is induced to sign a release of all damages by the agents of such other person through representations or acts which induce in his mind the belief that he is only signing a receipt for money paid him at the time for loss of time and expenses incident to the delay resulting from the accident, or if such release is procured by fraud and circumvention, it will be void as to the party so induced to execute the same. Fraud vitiates everything it touches. *Railway Co.* v. *Lewis*, 109 Ill. 120; *Railroad Co.* v. *Welsh*, 52 id. 183.

If a person, while under the influence of opiates to such an extent as to be incapacitated to contract, is induced to execute a release of damages for personal injury, it will not be obligatory upon him and will be no defense against an action brought by him. *Railway Co.* v. *Lewis*, 109 Ill. 120; *Eagle Packet Co.* v. *Defries*, 94 id. 598.

Mr. Justice Phillips delivered the opinion of the court:

Plaintiff's declaration consisted of seven counts, two of which were afterwards dismissed. The first charged the defendant with negligence in failing to keep entry No. 2 of its mine in a reasonably safe condition for hauling cars and the side of the track free from obstructions,

but, on the contrary, suffered large quantities of stone, coal, etc., to remain along the side of the track; that while plaintiff was driving the mule hitched to a loaded car, being in the exercise of ordinary care, etc., the mule kicked him and threw him over the front end of the car in such a way that he fell against the obstructions, and was thereby thrown under the car, which passed over his leg, so that it became necessary to amputate same. The remaining four counts are based on section 4 of the Mining act, a part of which provides that "all mines in which men are employed shall be examined every morning by a duly authorized agent of the proprietor, to determine whether there are any dangerous accumulations of gas, or lack of proper ventilation or obstructions to roadways, or any other dangerous conditions, and no person shall be allowed to enter the mine until such examiner shall have reported all of the conditions safe for beginning work. Such examiner shall make a daily record of the condition of the mine in a book kept for the purpose, which shall be accessible at all times for examination by the men employed in and about the mine and by the inspector."

The counts charge breaches of the duty imposed by the above section in various ways. In the second and third counts it is alleged that the defendant willfully suffered plaintiff to enter the mine well knowing of the obstructions to the roadway, and so permitted said obstructions to remain and men to enter while the conditions in the entry were dangerous. The fourth count alleges that the mule furnished plaintiff by the defendant was vicious and dangerous. The remaining counts charge that the defendant did not wholly comply with its duty in this: that it failed to have an examination made and the record of such examination put in a place accessible to plaintiff and other men, all "contrary to the statute."

Peremptory instructions were asked by the defendant at the close of the plaintiff's evidence, and also at the

close of all the evidence, to exclude the evidence under all but the first count, and also under the first count, and to direct the jury to find for the defendant, which instructions were refused.

The evidence of the plaintiff shows that an inspection was made on the morning of the accident, and recorded the same day, as follows:

"PAWNEE COAL COMPANY, *July 17, 1895.*

"Mine No. 1—I have examined the mine this morning and find the ventilation O. K.; fan running during night 61 revolutions; after 5 o'clock A. M. same revolutions.

"Roof—Second south, parting room 30, loose rock.

"Miscellaneous......          H. THOMAS, *Examiner.*"

· The evidence also shows that the track, being the space between the rails and for a distance of some ten inches on each side, was clear and free from obstructions, but that the remaining space of the entry to the east wall was used for the depositing of dirt and falls from the roof, etc., which, falling upon the track, were shoveled up and deposited there, out of the way of the cars. There was a large amount of testimony introduced to show that the roadway contemplated by the statute was this space between the rails and sufficient room for the cars to pass, and that it was usual and customary, and good mining method, to drive the entries very much wider than would be required for the passage of the cars and men, and to place the track near the one side and to leave the remaining space for the purpose of piling these cleanings, or "gob," and that this was the custom followed in this mine.

The testimony leaves no doubt that the plaintiff was thoroughly familiar with the condition of this entry, and he was permitted to testify, over the objection of the defendant, that he notified Edgar Carroll, the mine foreman, to clean up the entry "so I could pull my share of coal and keep from getting hurt. I told him that if I would get hurt or kicked off these pieces would throw

me under the wheels, and he said he would not clean up my entry until he had his own time. He said he would clean it up in the near future. I notified him two or three times after that, when he would come down my entry. I spoke to him in the mine about it before I spoke to him that day at the top of the mine. I told him on top of the shaft, before Mr. Koons, that I wanted my entry cleaned, and there was no space between rooms 39 and 40 to walk unless you would walk or crawl over your car, and he told me he would in a week or two. The day I spoke to him at the top of the mine was a day or two before I got hurt." The testimony tends to show further that the plaintiff was an experienced driver, and that the accident could have been avoided by "spragging" the car, or by riding on the rear of the car, instead of riding the "tail chain," as plaintiff was doing when he was hurt.

Plaintiff executed a release for all damages in consideration of a suit of clothes, transportation home, the payment of the doctor's bill, which amounted to about $115, and the cancellation of his store account,—all of which was paid him and which he has never offered to return to the defendant company. He claims that he did not know what he was doing when he signed the paper, as he was under the influence of opiates and was drunk, having taken considerable quantities of whisky and beer during the three days intervening the accident and the execution of the release by him.

The appellant contends that the obstructions, if any, shown to have existed and which caused the injury, were not in the roadway, and that the term "roadway," as used in the statute, means only the space between the rails, or possibly the space between the rails and a short distance on each side sufficient to allow the passage of the cars, and that it is not answerable, by reason of anything in the statute, for an injury caused by obstructions in the entry on the outside of the rails. The evidence was conflicting on this point, and appellant's contention

is settled adversely to it by the judgment of the Appellate Court, as there was abundant testimony to support this view.

The instructions were very voluminous. Nine instructions were given for the plaintiff. Seven instructions were given for the defendant as asked, and four which, before being given, were modified by the court. Twenty instructions asked by the defendant were refused. The first and third instructions for plaintiff were as follows:

1. "The court instructs the jury that intoxication so deep as to take away the agreeing mind,—to disqualify the mind to comprehend the subject of the contract, and its nature and probable consequences,—impairs a contract made while in that condition; and in this case, if you find, from the evidence, that at the time the alleged release offered in evidence by the defense was signed by the plaintiff, the plaintiff was so intoxicated as to render his mind incapable of agreement or of apprehension of the subject of the contract contained in the alleged release, and incapable of comprehending the nature of that alleged release and its probable consequences, then you are instructed that he was in that condition in which he could not make a contract under the law, and such release, so signed under such circumstances, would not bind the plaintiff."

3. "The jury are instructed that if the release relied upon by the defendant herein was obtained from the plaintiff while he was under the influence of liquor or opiates, and while he was in that mental condition in which he was incapable of understanding what he was doing, then you are instructed that obtaining a release or receipt from him would be in the fraud of his rights; and if you find that the release relied upon by the defendant herein was so obtained, then you are instructed that the same is of no effect in law."

A verdict was entered for the plaintiff, which was affirmed by the Appellate Court for the Third District.

Appellant complains of the giving of these instructions and others, and of the refusal of others tendered by it with reference to the release, and insists the instructions given are erroneous, in that they contain no qualification as to who brought about the intoxicated condition of the plaintiff, or whether the defendant or its agent had knowledge of it, or whether by his acts the plaintiff had since ratified the release, or rescinded and returned, or offered to return, the consideration, but insists that they amounted to an absolute instruction to find the release void.

It is a familiar and well established principle of law that where a person attempts to avoid a contract or instrument on the ground of fraud or misrepresentation he must return or restore all he has received under it, or offer to do so, or no action can be maintained by him. (*Ellington* v. *King*, 49 Ill. 449; *Bowen* v. *Schuler*, 41 id. 192; *Wheeler* v. *Mather*, 56 id. 241; *Wolf* v. *Dietzsch*, 75 id. 205.) And while the plaintiff might not be compelled to rescind before suit brought, under certain circumstances, as, for instance, where he does not know of the existence or nature of the contract, the law is that the rescission and offer to restore must be at the earliest practicable moment, whenever that may be. (*Hall* v. *Fullerton*, 69 Ill. 448; *McCarty* v. *Marlette*, 80 id. 526.) The release in question, if fairly entered into, would have constituted a complete bar to the cause of action. (*Kingsley* v. *Kingsley*, 20 Ill. 203; *Illinois Central Railroad Co.* v. *Welch*, 52 id. 183.) If, however, a release is procured by the perpetration of an active or positive fraud upon the plaintiff by the defendant or its officers, there may be circumstances under which the plaintiff will not be required to return or offer to return the consideration received for the pretended release, but he may bring his suit without doing so.

In *Chicago, Rock Island and Pacific Railway Co.* v. *Lewis*, 109 Ill. 120, the plaintiff had released all claim for damages by reason of an injury sustained, by signing a paper

which was represented to her to be a receipt only for expenses, a short time after being injured and while still under the influence of drugs and anæsthetics and while suffering great pain. The court, with reference to the effect of the release, in discussing the question whether it was incumbent on her to pay back, or offer to do so, the money received at the time of signing the alleged release, as a condition precedent to her right to bring suit for damages, say (p. 131): "It may be safely stated as undeniable law, if the release was obtained by fraud, at a time when plaintiff was incapacitated to contract, it was absolutely void from the beginning as between the parties, and will stand in the way of the assertion of no right by the party defrauded. On principle, an instrument absolutely void needs not to be rescinded to remove it out of the way of the assertion of a right. It is for the obvious reason it never had any binding force, and there was therefore nothing to rescind. A contract void on account of fraud, or for any other reason, is, in law, as though it had never been executed."

In the case of *Gibson* v. *W., N. Y. & P. R. R. Co.* 164 Pa. St. 142, where a release had been executed while the plaintiff was incapacitated from making a contract, his condition, however, being unknown to the defendant at the time, the court instructed the jury, if they found for the plaintiff they should allow him such sums as would compensate him for the injury, "less any sums he had received," (as was done in this case,) and after holding this to be error and the subsequent retention of the money received by the plaintiff and failure to return or offer to return the same a bar to his right to recover, say: "Where there is a disaffirmance of the contract because of fraud, the injured party may, in some cases, bring his action without re-paying or offering to re-pay the money received on the fraudulent contract. In such case the money is retained, not as a part of the consideration of a contract he denies, but as a part indemnity for the fraud perpe-

trated upon him.  *  *  *  But the case is wholly differ-
ent where he seeks to avoid a contract solely because of
a temporary incapacity when he made it,—an incapacity
of which he gave no sign and which was unknown to the
other party to the contract.  His conduct in keeping the
money,  *  *  *  with knowledge as to where it came
from,  *  *  *  is only consistent with an intention to af-
firm the contract. It is conclusive evidence of affirmance."

Fraud cannot exist without an intention to deceive.
(*Miller* v. *Howell*, 1 Scam. 499; *Warner* v. *Carlton*, 22 Ill. 415;
*Nelson* v. *Smith*, 28 id. 495; *Boies* v. *Henney*, 32 id. 130.) "Ac-
tual or positive fraud includes cases of the intentional
and successful employment of any cunning, deception or
artifice used to circumvent, cheat or deceive another."
1 Story's Eq. sec. 186.

The fraud referred to in the foregoing authorities that
would obviate the necessity of the return of money paid
in settlement and for a release is the fraud of the party
procuring the release, and must be an actual, intended
fraud.  The series of instructions given, omitted the quali-
fication as to whether the alleged release was procured
by the fraud of the defendant or its officers practiced
upon the plaintiff or of the effect of a subsequent rati-
fication by him, and in effect told the jury that the re-
lease was inoperative. There was evidence tending very
strongly to prove that the plaintiff did, with full knowl-
edge of the release and of the benefits received there-
under, ratify the same and express himself well satisfied
therewith, and that he felt the defendant company had
treated him very well.  The case was exceedingly close
on the facts, and the defendant was entitled to have the
jury fairly and accurately instructed as to the law gov-
erning every material feature of the case.

The defendant asked the court to instruct the jury
that the plaintiff must refund the amount paid for the
release before he could recover.  The release would be
a complete bar to a recovery, unless its binding effect

is avoided by some act or circumstance that renders the same invalid and ineffectual as a bar to this action. As we have heretofore said, to constitute it void and no bar to the action it must be because of some act done or performed by or at the instigation of the defendant which would amount to a fraud on the plaintiff. What would avoid the release and render the same inoperative as a bar must always be a question of fact, and is a question, like all other questions of fact, to be determined by the jury from the evidence before them, under proper instructions as to the law. No instructions were given by the court with reference to this question of the necessity to refund or offer to refund the consideration received for the execution of the release. The refusal of defendant's instructions asked on this question was error.

As heretofore said in this opinion, there may be such circumstances of fraud in the procurement of a release that it is not necessary to return the consideration; but whether such is the case or not, the rule is, that in all cases where a release has been executed and its effect is sought to be avoided, the circumstances of its execution and whether there is sufficient cause to avoid it, as well as whether a return of the consideration must be had, are questions of fact to be found by the jury under proper instructions.

By the seventh instruction given for the plaintiff the jury were told that if they believed, from the evidence, that the plaintiff came to his injuries as the result of a willful violation of the provisions of the law relating to defendant's duties, as stated in the instructions and as set forth in the last four counts of the declaration, then they need not find that the plaintiff was in the exercise of ordinary care, and they should assess his damages, etc., "less any amounts that he has received." Appellant complains of this instruction because by it the plaintiff was relieved of the obligation to exercise due care, and for the reason there was no evidence on which to base it.

If the omission of a statutory duty by the defendant, as a result of which the plaintiff is injured, is willful, the plaintiff need not show that he was in the exercise of due care. (*Carterville Coal Co.* v. *Abbott,* 181 Ill. 495, and authorities there cited.) Neither can we accede to the position that there was no evidence to support the instruction. It is true that plaintiff's own testimony shows that an examination was made, but it is not true that with the making of that examination the duties of appellant ceased. The law goes further, and provides that "no person shall be allowed to enter the mine until such examiner shall have reported all of the conditions safe for beginning work." The report itself did not state that all of the conditions were safe for beginning work, and taking the evidence for the plaintiff as true, as we must for the purposes of this discussion, the appellant had actual notice of the unsafe condition of this entry. Nor does it make any difference that plaintiff did not look for the record, under the facts of this case. Whether he relied on the statute or on the promise of the appellant to repair, he had the right to assume that the appellant would keep its promise, and he also had the right to assume that it would comply with the statutory requirement, and was not bound to ascertain each morning whether it was doing so.

Other errors are assigned by appellant, but as the case will have to be reversed for the causes given and they do not go to the real merits of the case, it would only unduly extend this opinion to discuss them.

The judgment of the Appellate Court for the Third District and the judgment of the circuit court of Vermilion county are each reversed and the cause is remanded.

*Reversed and remanded.*