## Wheeler & Wilson Manufacturing Company v. Sarah M. Barr.

### Gen. No. 12,991.

1. RELEASE—*what does not establish fraud in procurement of.* Held, from the evidence, that fraud in the procurement of the release pleaded in bar was not established.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed, with finding of fact. Opinion filed March 22, 1907.

Statement by the Court. This is an appeal from a judgment for $2,500 entered in the Superior Court in favor of appellee for personal injuries alleged to have been caused on November 5, 1900, by a horse and wagon driven by John D. Lahnum and owned by appellant. The defendant pleaded the general issue and a special plea averring full payment and satisfaction and a release of all causes of action. To this special plea the plaintiff replied that said release was obtained by fraud.

Appellee was about fifty years of age and was employed as a visiting dressmaker. She had been rid-

ing south in the rear car of a train on the Cottage Grove avenue cable line of the Chicago City Railway Company. When the car in which she was riding reached the barn between Thirty-eighth and Thirty-ninth streets in the city of Chicago, it was detached from the train for the purpose of being put into the barn. Appellee was so deaf that she could hear only through a speaking tube, and being absorbed in reading a newspaper, did not hear the announcement of the conductor to the passengers that the car was to proceed no further, and remained sitting in the car. After it was detached and a horse was hitched to it to pull it into the barn, appellee alighted from the west side of the south platform. She testified that she was facing west as she alighted, and that before getting off she looked up and down the street and did not see any horse or wagon. Seeing a cluster of men on the sidewalk directly opposite to her she turned slightly to the south as she alighted from the car to go across the street to the sidewalk, and took one or two steps and collided with the hub of the left front wheel of appellant's wagon, which was going south on the west side of the street between the car and the sidewalk. She was thrown down upon the payment in front of the wheel and along by the side of the horse drawing the wagon. The horse was stopped immediately by the driver of the wagon.

Appellee testified that she did not see the horse or wagon and did not know what knocked her down, although she could see half a block in distance.

Lahnum, the driver of the wagon, testified that he was driving south and as he approached the car barn Harry Miller crossed the street with his tow horse and hitched it to the north end of the standing car preparatory to pulling it into the barn. When he arrived opposite the north end of the car he saw appellee going out of the south end. He swerved a little to make room. She got off the car backwards and took one or two steps and collided with the hub of the front

wheel of the wagon. When he saw her getting off the car he shouted to her. She neither answered nor looked up, but continued to get off and stepped back against the wagon; that from the time she appeared on the step of the platform to the time she came in contact with the wagon she did not look toward the north.

Appellee was taken to a hospital where she remained ten days. The day before she left the hospital she signed a release of all claims and demands against appellant and Lahnum, in consideration of fifty-five dollars paid to her.

DANIEL F. FLANNERY, for appellant.

WILLIAM ROTHMANN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The question presented by the record is whether the plaintiff, appellee, is entitled to recover or not.

The question was preserved by motions to instruct the jury to find the defendant, appellant, not guilty made at the close of plaintiff's evidence; and a similar motion made at the close of all the evidence, and by the rulings of the court on instructions.

In regard to the alleged negligence of the driver of the wagon we are of the opinion that that was properly a question for the jury, and that the court did not err in refusing to take the case from the jury on the ground that the driver was not guilty of negligence under the testimony in the case.

We think, however, the motion to instruct for the defendant at the close of the evidence in the case should have been sustained and the instruction given, on the ground that appellee executed and delivered a release in writing of all rights of action against appellant for the injuries upon which this action was based, upon payment to her of thirty dollars in cur-

rency, and the payment of her hospital bill of ten dollars and her doctor's bill of fifteen dollars.

As said in Davis v. Weatherly, 119 Ill. App. 238-241: "The writing must speak for itself and its legal effect as a release and a complete bar, can be avoided in an action at law in only one way, and that is to prove that appellee's signature to it was obtained by fraud or that it was without consideration. As already stated the burden of such proof is upon appellee."

In Pawnee Coal Co. v. Royce, 184 Ill. 402-413, where instructions on the effect of a release and as to whether it was fraudulently obtained were under consideration, the court said:

"Fraud cannot exist without an intention to deceive. (Miller v. Howell, 1 Scam. 499; Warner v. Carlton, 22 Ill. 415; Nelson v. Smith, 28 id. 495; Boies v. Henney, 32 id. 130.) Actual or positive fraud includes cases of the intentional and successful employment of any cunning, deception or artifice used to circumvent, cheat or deceive another. 1 Storey's Eq., Sec. 186. * * * The release would be a complete bar to a recovery, unless its binding effect is avoided by some circumstance that renders the same invalid and ineffectual as a bar to this action. As we have heretofore said, to constitute it void and no bar to the action it must be because of some act done or performed by or at the instigation of the defendant which would amount to a fraud on the plaintiff."

Appellee's testimony regarding the release was that on the evening before she left the hospital she was conducted to a small room in the hospital, and directly after her arrival in the room, Dr. Henderson and Mr. Caughey, appellant's manager, entered the room. The doctor locked the door of the room and introduced Caughey to her. The doctor then produced a paper, and showed her what the hospital bill was. The release was not read to her, and she did not know its contents, and did not know she was settling with

the company. Caughey asked her to sign the paper, and she said to the doctor that she had promised not to sign any papers. She did not have her glasses with her and could not read the paper. She said she thought it was a receipt for the hospital bill. The doctor asked her to sign the paper and Caughey motioned to her three times to do so, and she signed the paper and received ten dollars in money.

Mr. Caughey, city manager of appellant, testified that he saw Dr. Henderson, the head of the hospital, who went up to a room with him where appellee was, and that the witness was introduced to appellee by the doctor. She had a trumpet through which Dr. Henderson talked to her. The doctor told her that the witness was the manager of appellant, and that he was there to make a settlement with her and that he had a release. He told her that appellant was to pay Dr. Green's bill and the hospital bill. There was some controversy as to the amount to be paid, but it was finally settled that appellant was to pay her $30 and pay the hospital bill of $10 and Dr. Green's bill of $15. The doctor handed her the release which the witness had and she read it, and the doctor then said to her: "Now you thoroughly understand this— this is a release." Appellee replied: "Somebody has told me not to sign any paper." The doctor then said: "This settles the question entirely with Mr. Lahnum and with the Wheeler & Wilson Company." Appellee then signed the release and the witness gave her the money. Dr. Henderson and the witness signed the paper as witnesses.

The release and the receipts of the hospital and Dr. Green's bills were introduced in evidence in connection with the testimony of the witness.

At the interview at which the release was signed appellee, Dr. Henderson, who has since died, and Caughey were the only persons present.

In our opinion, the testimony of appellee, considered

by itself, does not even tend to show that any fraud was perpetrated on her to obtain her signature to the release. It is inconceivable that she thought that she was signing a receipt for the hospital bill. She was a woman of mature years and of sound mind. She was able to read and write, and by her own showing she had an opportunity to inform herself of the contents and terms of the release. She admits she could see the writing and the figures. She does not claim that she asked to have the paper read to her, or that she stated at the time that she did not understand it. She admits that she saw no other paper there. If no one told her what the paper contained, as she testifies, then no one misinformed her as to its contents. On the trial it appeared that she read writing without the aid of glasses.

Taking into consideration all the evidence upon the release, we are of the opinion that it falls short of making out a case of fraud and that the release must be held to bar her action for damages in this case. The trial court erred in refusing to instruct the jury to find for the defendant.

This conclusion upon the question of the release makes it unnecessary for us to consider or discuss the other questions raised on this appeal.

The judgment is reversed with a finding of fact.

*Reversed, with finding of fact.*