## THE SPRING VALLEY COAL COMPANY
### *v.*
### JOHN ROWATT.

*Opinion filed April 16, 1902.*

1. TRIAL—*what evidence sufficient to go to the jury as to whether place where miner was injured was an exit to the escapement shaft.* Evidence that the passage where a mule driver in a mine was injured was the shortest road to the escapement shaft, although there was another longer road, is sufficient to go to the jury on the question whether such place was a "passageway communicating with the escapement shaft" or an "exit from main hauling ways to the escapement shaft," which by statute are required to be of a certain height and width.

2. MASTER AND SERVANT—*master's duty of furnishing safe place to work cannot be delegated.* The master cannot delegate to another the duty of furnishing his servant with a safe place to work, so as to relieve himself from liability for the neglect of such duty.

3. SAME—*when contributory negligence does not enter into case.* In an action for willful violation of the act for the protection of miners the question of the plaintiff's contributory negligence does not enter into the case.

4. APPEALS AND ERRORS—*when failure to limit recovery to ad damnum is harmless.* Failure of instructions to limit the plaintiff's recovery to the amount claimed in the declaration is harmless, where the amount claimed is $20,000 and the verdict is for $1200 damages for injuries which the evidence tends to show are permanent.

*Spring Valley Coal Co.* v. *Rowatt*, 96 Ill. App. 248, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. CHARLES BLANCHARD, Judge, presiding.

ALFRED R. GREENWOOD, for appellant.

J. L. MURPHY, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a suit for damages for personal injury, brought by the appellee, against the appellant, in the circuit court of Bureau county. Upon trial before a jury there was a judgment rendered for $1200, which judgment, on appeal to the Appellate Court for the Second District, was affirmed. The appellant brings the case here for review.

The declaration charges that the appellant, a coal mining company in the State of Illinois, did not maintain its roadways and passageways communicating with its escapement shaft, wherein mules were being driven and the cars were being hauled, so that the same should not become obstructed, unsafe or dangerous to the driver, and did not keep the bottom, wall, roof and sides thereof free and clear of dangerous obstructions, low and confined places and other dangerous conditions, so that drivers might pass and ride along the same, conducting mules and cars, without coming in contact with or being borne violently against or getting caught or crushed in any such obstruction, low or narrow place or other impediment of said roadways, and did not keep said roadways of the height and width of five feet, and did not cause the said mine to be examined, on the morning of the accident, by a duly authorized agent of the appellant, to determine whether there were any obstructions or impediments to certain roadways, or other dangerous conditions, and permitted the appellee and other persons to enter into said mine, for the purpose of going upon

their employment therein, without such an examination having been made and without such duly authorized examiner having reported all conditions safe for beginning work, and without the record of such examination having been made, but therein made default, contrary to the law and the statute in such case made and provided; and also averred that appellant had due notice of the aforesaid dangerous condition of said roadway.

It appears from the record in this case that appellee, while engaged in his duties as a driver in the mine of appellant, and while passing along a certain passageway, was caught by the roof of such mine and thrown or jerked to one side of a loaded "trip" of cars which he was driving, and seriously if not permanently injured. It further appears that the roof at this particular point was about four feet to four feet six inches high; that it was extremely dangerous, and had been reported to the company by appellee a few days before this injury, at which time the company promised that it would repair the same, but no material effort to do so was ever made. No inspection of the mine had been made the morning of the day upon which appellee was injured, nor had there been an inspection made the day before. It seems the company had a book of blanks properly filled up, with the exception of the date and signature, certifying that the mine had been examined on each day, and that the same was found to be "free from dangerous gases, the air circulating properly and the entries in safe condition," but failed to report that all the conditions concerning which the statute requires an examination and report to be made were safe for beginning work. There is some evidence to the effect that appellee, after the injury, stated the accident was his own fault; that he had put a boy in his place, which he should not have done.

The appellant has filed in this court practically the same brief that was filed in the Appellate Court, and much space is devoted therein to the discussion of facts.

There was no instruction requested by appellant at the close of all the evidence to find the defendant not guilty, and therefore this court is precluded on all such questions of fact by the judgment of the Appellate Court.

The first question raised by appellant is, that there is no proof in this case to support the allegation of willful negligence, inasmuch as the proof showed that the passageway in which appellee was injured was not a "passageway communicating with the escapement shaft" nor a place of "exit from main hauling ways to the escapement shaft," and therefore the court erred in giving appellee's instruction No. 5, which was to the effect that if the defendant violated the provisions of the statute in maintaining the passageway where plaintiff was injured, and which passageway communicated with the escapement shaft, less than five feet wide or five feet high, and that such accident was the result of the willful failure of the defendant in that regard, then it was not necessary for the jury to find that the plaintiff, at the time of such accident and injury, was in the exercise of ordinary care, before the defendant could be found guilty. On the point covered by this instruction John McKenna testified: "In order to get to my place I would start at the bottom of the shaft and go right straight along the main entry about four or five hundred yards; then I would go straight east between four and five hundred yards, I think, then turn to the left and go about three hundred feet, then turn to the left again,—I couldn't say how far,—three hundred feet to the face of the coal. The route just described was the route to get out to the escapement shaft. You could get to it by what they called the 'sixth east,' but that was the longest road. The road I have just described was the shortest road from where I loaded the coal to the escapement shaft. That was the road John Rowatt worked in." We think this sufficient evidence to warrant the giving of the instruction and submitting that question of fact to the jury.

The second question raised is, that two or three days before the accident, after appellee had explained to appellant the dangerous condition of the roof, appellee, together with others, went to the particular place and attempted to clear up the roadway, and therefore the failure to put it in proper shape was a failure and negligence of a fellow-servant, for whose act, under the law, appellant is not liable, and therefore the refusal of the court to give instruction No. 9, which was to the effect that the plaintiff assumed the natural and ordinary risk incident to the business in which he was engaged, and that the employee contracted that the defendant should not be liable for injury sustained caused by the act of a fellow-servant, or where it was occasioned because of his own want of ordinary care for his own safety, was erroneously refused. This contention can have no weight. It is an elementary principle of law that the duty of furnishing a servant a safe place to work is non-assignable, and that the master cannot escape liability by an attempt to place such duty on the shoulders of another. This was the master's duty. As to this instruction there is also the further objection the allegation was that the defendant had violated the Mining act, and the question of fellow-servant did not arise. It also coupled on the question of ordinary care for his own safety, and we said in *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495 (on p. 502): "Where an owner, operator or manager so constructs or equips his mine that he knowingly operates it without conforming to the provisions of this act, he willfully disregards its provisions and willfully disregards the safety of miners employed therein. Where such owner, operator or manager willfully disregards a duty enjoined on him by legislation of this character and places in danger the life and limbs of those employed therein, he cannot say that because one enters a mine as a miner with knowledge that the owner has failed to comply with his duty he is guilty of contributory negligence. * * * Mere contribu-

tory negligence on the part of a miner will not defeat a right of recovery where he is injured by the willful disregard of the statute, either by an act of omission or commission on the part of the owner, operator or manager." To the same effect are the cases of *Pawnee Coal Co.* v. *Royce*, 184 Ill. 402, and *Odin Coal Co.* v. *Denman*, 185 id. 413.

The next contention of appellant is, that the court erroneously refused defendant's instructions numbered 10 to 20, inclusive. These instructions state the rule as to what constitutes fellow-servants and the law applicable to the doctrine of fellow-servants, and also the doctrine of contributory negligence. It is clear, under the cases cited, that the question of contributory negligence did not enter into this case. Neither, under the evidence, did the question of fellow-servants enter into the case, and those instructions had no bearing on the issues submitted to the jury.

It is next insisted that it was error for the court to give instruction No. 1 and instruction No. 6 for the plaintiff, for the reason that by them the jury were told that they might give plaintiff such damages as would reasonably compensate him for the injury he had sustained, without limiting them to the amount sued for. The *ad damnum* clause of the declaration was for $20,000, and the evidence seems to indicate that the plaintiff is permanently injured. The amount of damages recovered in this case was $1200, which, from a review of the whole case, is reasonable. It could not be said that the jury were misled by such instructions or that the defendant was prejudiced in any way by the giving of them. The appellant, in the courts below, did not assign as error that the verdict of the jury was excessive, and we can not see that it was injured in any way by the giving of either of said instructions.

Finding no errors requiring a reversal, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*