## MONTEITH v. KOKOMO WOOD ENAMELING COMPANY.

[No. 19,580.   Filed June 25, 1902.]

MASTER AND SERVANT.—*Personal Injury.*—*Failure to Guard Dangerous Machinery.*—*Knowledge by Employe.*—*Volenti non fit Injuria.*—A complaint for a personal injury to an employe while operating a circular saw, resulting from the failure of the employer to guard the same, as required by §7087i Burns 1901, is sufficient without an averment that the plaintiff had no knowledge of the unguarded condition of the saw and the dangers resulting therefrom.

From Howard Superior Court; *Hiram Brownlee*, Judge.

Action by Frank L. Monteith against the Kokomo Wood Enameling Company for personal injuries. From a judgment for defendant on demurrer to complaint, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*B. C. Moon*, for appellant.

*J. C. Blacklidge*, *C. C. Shirley* and *Conrad Wolf*, for appellee.

DOWLING, C. J.—This was an action for a personal injury alleged to have been sustained by the appellant while in the employment of the appellee in consequence of the neglect

of the appellee to perform a statutory duty owing to him. A demurrer to the complaint for the insufficiency of the facts stated was sustained, and, the appellant refusing to amend, judgment was rendered against him. The ruling on the demurrer is assigned for error.

The material averments of the complaint are as follows: The appellee was on October 4, 1900, a corporation, and owned and carried on a factory in the city of Kokomo, Indiana. On said day, the appellant was, and for some weeks had been, employed by and working for the appellee at its said factory. In the course of his employment, and in pursuance of the instructions of the appellee, the appellant was engaged in operating and using a small circular saw driven by steam at a high rate of speed. During the whole time the appellant was so employed, there was a defect in the machinery so used by him, which was known to the appellee, and which consisted in the absence of a guard over the said saw, the appellee having negligently failed to provide any such guard. In consequence of such defect, and of the negligence of the appellee in failing to provide such guard, the appellant, on the day aforesaid, while in said employment, was injured by the contact of his left hand with the said saw while he was operating the same, his thumb and two fingers being cut off.

The sufficiency of the complaint is contested upon the ground that the defect which caused the supposed injury, and the dangerous condition created by it, were necessarily open and obvious; that the appellant was bound to take notice of them; and that it appears that with knowledge of the danger he assumed the risk. The question is, can an employe recover for an injury resulting from an obvious defect in machinery resulting from the employer's failure to perform a statutory duty? In other words, is the complaint bad because it does not aver that the appellant was ignorant of the dangers arising from the failure of the employer to guard the saw?

Under the rules and maxims of the common law, where the danger is obvious and known to and appreciated by the servant, if he continues in the employment without inducement through the promise of the master to repair or make safe, he waives his right to hold the master responsible for injury occurring to him from the negligence of the master, and assumes the risk of such injury himself. If the danger is as well known or as manifest to the servant as to the master, and is understood by him, the servant enters or continues in the employment at his own risk. *Pennsylvania Co.* v. *Sears,* 136 Ind. 460; *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561; *Whitcomb* v. *Standard Oil Co.,* 153 Ind. 513; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Greenleaf* v. *Illinois Cent. R. Co.,* 29 Iowa 14, 4 Am. Rep. 181; *Lindsay* v. *New York, etc., R. Co.,* 112 Fed. 38, 50 C. C. A. 298.

It is entirely clear, however, that where an absolute and specific duty to guard or fence dangerous machinery is imposed upon the master by statute, such new condition must, in a very material manner, affect the relations of the parties, and modify, to a considerable extent, their rights and duties as they existed at common law. And here a distinction is to be noted between statutes such as the employer's liability act (Acts 1893, p. 294, §§7083-7087 Burns 1901), which provide in general terms that the employer shall be liable for injuries to an employe where the injury is occasioned by reason of defects in the condition of ways, works, plant, tools, and machinery, etc., and statutes which require of the employer the performance of a specific duty, such as to guard or fence dangerous machinery. Statutes of the former class do little more than declare the rule of the common law. Statutes of the latter class impose specific obligations. A failure to comply with the requirements of the first may or may not be negligence. A violation of the second is an unlawful act or omission, a plain breach of a particular duty owing

to the servant, and generally constitutes negligence *per se.* *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357; *Baltimore, etc., R. Co.* v. *Conoyer,* 149 Ind. 524; *Shirk* v. *Wabash R. Co.,* 14 Ind. App. 126; Thompson, Neg. (2d ed.), §§10, 11, 211; *Western, etc., R. Co.* v. *Young,* 81 Ga. 397, 7 S. E. 912, 12 Am. St. 320; *Thompson* v. *Wright,* 22 Ont. 127.

Although the complaint makes no reference to the statute, the action is founded upon §9 of the act of March 2, 1899 (Acts 1899, p. 231, §7087i Burns 1901), entitled "An act concerning labor, and providing means for protecting the liberty, safety, and health of laborers, providing for its enforcement by creating a department of inspection, and making an appropriation therefor, repealing all laws in conflict therewith." Section 9 contains this provision: "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws, and machinery of every description therein shall be properly guarded." Section 25 of the act declares that "Any person who violates or omits to comply with any of the provisions of this act * * * shall be deemed guilty of a misdemeanor, and on conviction shall be fined not more than $50 for the first offense, and not more than $100 for the second offense, to which may be added imprisonment for not more than ten days, and for the third offense, a fine of not less than $250 and not more than thirty days' imprisonment in the county jail." The act does not in terms give a right of action to the person injured, nor is any part of the penalty recoverable by, or payable to, such person.

The general rule is that when a statute requires an act to be done by one person for the benefit of another, and an injury is sustained by one intended to be protected by reason of a violation of such statutory duty, an action lies in favor of the latter against the former for the neglect to perform such duty, even though the statute gives no special remedy. 1 Comyns' Digest: Action (A); Wharton, Neg.

(2d ed.), §443; Bishop, Non-contract Law, §132; *Pauley* v. *Steam Gauge, etc., Co.,* 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; *Willy* v. *Mulledy,* 78 N. Y. 310, 34 Am. Rep. 536; 1 Thompson, Neg., §8, p. 506; Cooley, Torts (2d ed.), 654; *Osborne* v. *McMasters,* 40 Minn. 103, 41 N. W. 543, 12 Am. St. 698 and note. The later American and English cases qualify the general rule to this extent, that the right to bring an action for damages for an injury resulting from the breach of a statutory duty depends on the purview of the legislature in the particular statute, and the language which they have there employed. *Atkinson* v. *Newcastle, etc., Water-Works Co.,* L. R. 2 Ex. D. 441; *Hayes* v. *Michigan Cent. R. Co.,* 111 U. S. 228, 239, 4 Sup. Ct. 369, 28 L. Ed. 410.

What, then, is the scope of the statute under consideration? Its title indicates its purpose. It is "an act concerning labor, and providing means for protecting the liberty, safety, and health of laborers." The object of many of its provisions is to reduce the hazards of certain employments in which machinery is used. Its effect is to impress upon certain kinds of machinery, such as saws, planers, cogs, gearing, belting, or shafting, in any manufacturing establishment, the character of dangerous machinery, and to interdict their use by the employer unless properly guarded.

Before the passage of the act of March 2, 1899, what was the position of laborers in factories where exposed saws, planers, etc., were used? If they saw and realized the danger attending the use of such machinery, they must either have assumed the risk of injury from it, or quit their employment. No law required the employer to put up a fence or guard, and he was relieved from liability in case of injury to his employe. The expressed purpose of the act being to secure the safety of the laborer, how is that object to be accomplished through its instrumentality? A violation of its provisions may be punished by fine and

imprisonment of the employer, or certain of his representatives. But in case of injury the laborer would derive no benefit from a criminal prosecution. The State has an interest in the preservation of the lives, the limbs, and the health of all of its citizens; and for this reason, on grounds of public policy, the legislature may enact laws for their safety and protection when employed in factories or other places where dangerous machinery is used. The laborer has a much greater interest in the preservation of his own safety than has the public. The statute is designed primarily and chiefly for his benefit, and upon a violation of its provisions, and a consequent injury to him, he has a right of action and a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the terms thereof. The public wrong may be redressed by fine and imprisonment. The private injury can be compensated only by the payment of damages to the injured workman. *Zimmerman* v. *Baur*, 11 Ind. App. 607, 613, 614; Dresser's Employers' Liability, 246, 247, 594.

So far the law is plain. But at this point we are met by the rule *volenti non fit injuria*. In the case of a violation of a specific statutory duty by the employer, resulting in an injury to the workman, is the latter deprived of his remedy for the private injury by his knowledge and appreciation of the risk? In other words, if the master, in disregard of the statute, fails to guard the dangerous machinery, and the workman knowing that the statute is being violated, seeing the defect, and comprehending the danger, does he continue in the employment and in the use of the unguarded machinery at his own risk, or at the risk of his employer? On this question, the authorities in this country are by no means uniform. The English cases generally sustain the proposition that where there is a violation of a specific statutory duty of the employer to fence or guard

machinery declared by law to be dangerous, he, and not the workman, assumes the risk of injury to the workman.

*Clarke* v. *Holmes,* 7 H. & N. 973, 31 L. J. R. (N. s.) Exch. 356,—sometimes referred to as sustaining the view that a right of action accrues to the injured workman from a violation of the statutory duty on the part of the employer to fence dangerous machinery,—does not decide that point.   Lord Chief Justice Cockburn doubted whether the liability of the defendant in that case arose under the factory acts, Statutes 7 & 8 Vict. Chap. 15; and 19 and 20 Vict. Chap. 38, requiring machinery to be fenced, owing to the plaintiff being an adult; and Byles, J., expressly said: "I do not rest the right of the plaintiff to recover on the statutable obligation incumbent on the master to fence the machinery," etc.   The facts were that the plaintiff was employed by the defendant to oil dangerous machinery.   At the time he entered upon the service, the machinery was fenced, but the fencing became broken.   The plaintiff complained of the dangerous state of the machinery, and was promised that the fencing should be restored.   The plaintiff continuing in the service, on the faith of that promise, was injured without negligence on his part.   The judgment of the exchequer chamber that the defendant was liable for the injury was affirmed on the ground that the defendant independently of any statutory duty was negligent in not repairing the fencing of the machinery, and that the plaintiff had a right to rely on the promise to repair, and continued in the service, exercising due care.

*Thomas* v. *Quartermaine,* L. R. 18 Q. B. D. 685, was brought upon the employer's liability act, 1880.   Section 1 of that act provided that "Where after the commencement of this act personal injury is caused to a workman—(1) By reason of any defect in the state or condition of the ways, works, machinery, or plant connected with or used in the business of the employer," and, in four specified instances by reason of negligence of others in the employer's

service, "the workman * * * shall have the same right of compensation and remedies against the employer as if the workman had not been a workman of, nor in the service of, the employer, nor engaged in his work."

In that case, the defendant was the owner of a brewery in which was a vat full of scalding liquid, around which there was a rim sixteen inches high, and near it a boiling vat. The plaintiff attempted to pull a board from under the latter, which came out more easily than he expected, so that he fell back into the scalding fluid and was injured. It was held by Bowen and Fry, L. JJ.,—Lord Esher, M. R., dissenting,—that the defense arising from the maxim *volenti non fit injuria* had not been affected by the employer's liability act, and applied to the circumstances of that case; that there was, therefore, no evidence of negligence arising from a breach of duty on the part of the defendant toward the plaintiff, and that the plaintiff was not entitled to recover. It will be noticed that the act imposed no specific obligation on the employer to fence or guard machinery, and that its declared object was to place a workman, injured by reason of any defect in the ways, works, machinery, or plant connected with or used in the business of the employer, in the same position as a stranger lawfully on the property by the invitation of the occupier.

The difference between an action arising upon this act, and one founded upon the violation of a particular and definite duty imposed by statute is repeatedly recognized in the opinions of Bowen and Fry, L. JJ. For instance, it is said by the former: "It is no doubt true that the knowledge on the part of the injured person which will prevent him from alleging negligence against the occupier must be a knowledge under such circumstances as lead necessarily to the conclusion that the whole risk was voluntarily incurred. The maxim, be it observed, is not *'scienti non fit injuria,'* but *'volenti.'* It is plain that mere knowledge may not be a conclusive defense. There may be a perception

of the existence of the danger without comprehension of the risk; as where the workman is of imperfect intelligence, or, though he knows the danger, remains imperfectly informed as to its nature and extent. There may again be concurrent facts which justify the inquiry whether the risk though known was really encountered voluntarily. The injured person may have had a statutory right to protection, as where an act of parliament requires machinery to be fenced." And Fry, L. J., refers to the same important distinction when he says: "Knowledge is not of itself conclusive of the voluntary character of the plaintiff's actions: there are cases in which the duty of the master exists independently of the servant's knowledge, *as when there is a statutory obligation to fence machinery.*" (Our italics.)

*Britton* v. *Great Western Cotton Co.,* 7 L. R. Ex. 130, was decided upon this state of facts. B., aged twenty-two, was employed by the defendants, the owners of a "factory," within the meaning of 7 Vict. Chap. 15, to grease the bearings between the fly and spur-wheel of a steam engine in their engine house. In order to do the work he had to stand on a wall two feet three inches thick, in a cavity made for the purpose, the fly-wheel being on his left hand, revolving in a "wheel-race" in the engine house, and the spur-wheel on his right hand, revolving in another room in the factory. The two wheels revolved in parallel planes, the distance between them being two feet ten inches. There was no fence along the wall edge of the wheel-race on which B. was placed to do his work; and the fly-wheel,—near to which, however, children or young persons were not liable to pass or be employed,—was unfenced. At the time of the accident, B. had been at work for five days. On the sixth morning he was caught by the fly-wheel, whirled into the air, and killed. At the trial of an action by his widow and administratrix for pecuniary loss sustained by his death, the jury found that he had not been guilty of contributory negligence, either in undertaking the employ

ment, or whilst engaged upon it, and returned a verdict for. the plaintiff. On a rule to set it aside, pursuant to leave, on the ground that there was no statutory duty to fence the place in question, and that the deceased had voluntarily encountered the risk incidental to his employment, it was held: (1) That the defendants were bound under 7 and 8 Vict. Chap. 15, §21, to fence the place where B. had to stand, it being near the edge of a wheel-race not otherwise secured; and (2) that the dangerous character of the employment was not so obvious that he must necessarily be taken to have known it; that circumstance alone was not enough to constitute him a "volunteer" in such a sense as to exonerate the defendants from liability for the consequences of their breach of their statutory duty. In the course of his opinion, Bramwell, B., says: "But now we come to the great difficulty in the case. Does the maxim, *'volenti non fit injuria,'* apply? I think not. True, Britton was in one sense *'volens'*. He need not have gone where he did. But he must not only be a volunteer in the sense that he went there when he might have stopped away, but it must clearly appear that he went voluntarily, with a full knowledge and understanding of the risk. It is suggested he must have known it. I doubt it. The jury have found him not guilty of contributory negligence either in going or being there, and I can not say they were wrong. I do not myself see that the place was necessarily dangerous. At any rate the deceased may well have thought it was not. Indeed, the accident seems to have resulted not from the necessarily dangerous character of the place, but from some misfortune which might have happened anywhere. It is further contended that at any rate the deceased knew the danger as well as his employers. That may be doubtful in fact, for he seems not to have been a skilled workman, but a coal trimmer. Assuming, however, that he did share his employers' knowledge, it must be remembered that the liability of the defendants here is not at common law but by

statute. They are in default to begin with, and the mere circumstance that the deceased entered on a dangerous employment does not exonerate them, unless he knew the nature of the risk to which, in consequence of that default, he was exposed."

In *Baddeley v. Granville,* L. R. 19 Q. B. D. 423, the same principle is affirmed even more positively than in the cases already mentioned. It is there said by Wills, J., that "An obligation imposed by statute ought to be capable of enforcement with respect to all future dealings between parties affected by it. As to the result of past breaches of obligation people may come to what agreements they like; but as to future breaches of it, there ought to be no encouragement given to the making of an agreement between A and B that B shall be at liberty to break the law which has been passed for the protection of A. Such an agreement might be illegal, though I do not hold as a matter of law that it would be so. But it seems to me that if the supposed agreement between the deceased and the defendant, in consequence of which the principle of *volenti non fit injuria* is sought to be applied, comes to this, that the master employs the servant on the terms that the latter shall waive the breach by the master of an obligation imposed on him by statute, and shall connive at his disregard of the statutory obligation imposed on him for the benefit of others, as well as of himself, such an agreement would be in violation of public policy and ought not to be listened to. On that ground there is much to be said in favor of the opinion expressed in the court of appeal, that where there has been a breach by a defendant of a statutory obligation the maxim *volenti non fit injuria* has no application." See, also, *Groves* v. *Wimborne,* (1898) 2 Q. B. 402, 67 L. J. Q. B. 862; *Smith* v. *Baker,* (1891) App. Cas. 325.

From these and other cases of similar import in the English courts, the following rules have been deduced: "Where a statute of a public character prescribes in re-

gard to a class of persons the performance of certain acts, as reasonable precautions for the health or safety of a class of persons having to do with them, the neglect of such a statutory precaution gives a right of action to any person, within the scope of the intended benefit, who, by reason of the neglect, suffers damage of the kind intended to be provided against." 19 Eng. Ruling Cases, 42. "The maxim *volenti non fit injuria* is not applicable in cases where the •injury arises from the breach of a statutory duty. Mere knowledge on the part of the servant that the plant employed was defective and dangerous will not necessarily be construed as amounting to a voluntary undertaking of a particular risk." 17 Eng. Ruling Cases, 212. Many American courts have expressed similar views. *Litchfield Coal Co.* v. *Taylor,* 81 Ill. 590; *Catlett* v. *Young,* 143 Ill. 74, 32 N. E. 447; *Durant* v. *Lexington, etc., Co.,* 97 Mo. 62, 10 S. W. 484; *Simpson* v. *New York, etc., Co.,* 80 Hun 415, 30 N. Y. Supp. 339; *Narramore* v. *Cleveland, etc., R. Co.,* 37 C. C. A. 499, 96 Fed. 298, 48 L. R. A. 68; *Landgraf* v. *Kuh,* 188 Ill. 484, 59 N. E. 501; *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495, 55 N. E. 131; *Spring Valley Coal Co.* v. *Rowatt,* 196 Ill. 156, 63 N. E. 649. The same doctrine has been recognized in this State. *Buehner Chair Co.* v. *Feulner,* 28 Ind. App. 479; *Davis Coal Co.* v. *Polland,* 158 Ind. 607.

In the case last cited, it is said: "A definite standard [of care] was fixed by the legislature. It is the duty of the employer to use the very means named in the statute. He is not at liberty to adopt others though, in his opinion, they are more efficacious than those prescribed by the law-makers. How, then, can there be any lawful basis for an agreement, implied or express, that the employer shall violate the law, and that the employe shall be remediless?"

The case of *Knisley* v. *Pratt,* 148 N. Y. 372, 32 L. R. A. 367, is directly in conflict with the rules established by the English cases, and adopted by the courts of this

country in Illinois, Missouri, Ohio, and Indiana. The court say: "We are of opinion that there is no reason in principle or authority why an employe should not be allowed to assume the obvious risks of the business as well under the factory act as otherwise. There is no rule of public policy which prevents an employe from deciding whether, in view of increased wages, the difficulties of obtaining employment, or other sufficient reasons, it may not be wise and prudent to accept employment subject to the rule of obvious risks. The statute does indeed contemplate the protection of a certain class of laborers, but it does not deprive them of their free agency and the right to manage their own affairs."

In the earlier case of *Willy* v. *Mulledy,* 78 N. Y. 310, 34 Am. Rep. 536, the court held that the discovery by a tenant that the landlord had violated his statutory duty to provide fire-escapes, did not absolve the defendant; that the tenants, "after making the discovery, were not bound at once to leave the house and go into the street. They had a reasonable time to look for and move into other apartments; and, by remaining for such reasonable time, they waived nothing."

In *Huda* v. *American, etc., Co.,* 154 N. Y. 474, 482, 48 N. E. 897, 40 L. R. A. 411, it was said by the court, Gray, J., delivering the opinion: "Of course, it is not to be understood from what has been said that it necessarily follows that employes would assume such risks connected with the management of the business as would result from a violation by the employer of the statute in a neglect to provide fire-escapes. That presents a different question."

In the present case, the risk existed at the time the appellant entered the employment. Whatever it was, whether great or slight, obvious or otherwise, it resulted from the failure of the employer properly to guard the saw. But we can not say, as a matter of law, that the use of the saw

without a guard appeared to the appellant to be necessarily dangerous. The position of the saw, and the manner in which it was to be used, may have seemed reasonably safe. There is nothing in the complaint to show that the appellant had any cause to think the saw dangerous. The complaint does not allege that the appellant had no knowledge of the fact that the saw was not guarded, or that he did not see and comprehend such danger as arose from its condition. And in an action upon §9 of this statute, this averment was not necessary.

Notwithstanding the violation of the statute by the employer, it would be the duty of the employe to exercise reasonable care in the use of the unguarded saw; and if his own negligence contributed to the accident he could not recover.

Many important questions may arise under the act of March 2, 1899, generally known as the factory act, and we do not wish to be understood as anticipating or deciding them. What we decide is that the complaint in this case, for a supposed injury arising under §9 of that act, is sufficient, without an averment that the plaintiff had no knowledge of the unguarded condition of the saw, and the dangers resulting therefrom.

Judgment reversed, with instructions to the court to overrule the demurrer to the complaint, and for further proceedings in conformity to this opinion.