## Schillinger Bros. Company v. Ernst E. Smith.

### Gen. No. 4,572.

1. PEREMPTORY INSTRUCTION—*when should not be given.* Where there is evidence tending to prove the plaintiff's cause of action, a peremptory instruction should be denied.

2. SAFE PLACE TO WORK—*master's duty to furnish.* It is the duty of a master to use reasonable care to furnish his servant with a safe place to work, and the performance of this duty cannot be delegated.

3. ASSUMED RISK—*when doctrine of, does not apply.* Where the risk in question is not obvious, the doctrine of assumed risk does not ordinarily apply.

4. SPECIAL FINDINGS—*how effective to cure defects in general verdict.* The general verdict may be aided and irregularities cured by special findings.

5. FOREMAN—*what evidence admitted to prove character of workman as, will not reverse.* The fact that a witness in the course of his testimony called a workman "boss" is not ground for reversal where all the facts and circumstances were before the jury.

Action on the case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed March 10, 1906. Rehearing denied July 17, 1906.

DANIEL MCCASKILL & SON, for appellant.

JOHN W. D'ARCY, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

At the time the injuries sued for in this case occurred appellant was engaged in erecting a building, the walls of which were constructed of fire proof tile, and had

in its employ in doing the work a number of laborers, including appellee. As the walls were built up, scaffolding was provided upon which the men stood to do their work, and upon which materials were placed. The scaffold was about fifty feet long, six feet wide and fourteen feet high at the time of the accident, was standing along the north wall of the building and was constructed of boards laid on wooden horses. Some of these horses had been previously used for lower scaffolds in other parts of the building and their legs which were composed of two by four timbers had to be lengthened by splices to get the required height for work on the north wall. Two of these horses near the center of the scaffold were lengthened four feet by nailing two boards to them one inch thick and six inches wide. In doing this work six-penny nails were used. Previous to the time the tile setters went to work the morning of the accident there had been placed on the scaffold a large number of tile of considerable weight, to be used in building the wall. Appellee was a tile setter. Upon arriving at the building the morning of the accident he changed his clothes and at once went upon the scaffold to begin work. Almost immediately upon his getting on the scaffold the spliced legs of the wooden horses gave way, throwing him to the floor below, and for injuries he claims to have thereby sustained he brought this suit and obtained a verdict for $4,800. The court overruled a motion for a new trial and rendered judgment on the verdict in favor of appellee for the amount of the verdict and interest thereon from the date of its return by the jury to the date of the rendition of the judgment, which was about two months later. From that judgment this appeal is prosecuted.

It is first contended by appellant that the fall of the scaffold was caused by its being overloaded and that the overloading was done by Mueller, a fellow-servant of appellee, and for that reason there can be no re-

covery. The evidence shows that helpers at Mueller's direction placed the tile on the scaffold before the men went upon it to work and before appellee arrived at the building. Appellee contends that Mueller had charge of and directed the men engaged in laying the tile in the wall and stood in the relation to them of vice principal. The witness Trumbull testified he was helping the tile setters, that Mueller was the boss tile setter and directed appellee to go upon the scaffold. He further testified that Mueller directed appellee and other tile setters in their work, gave orders for placing tile and mortar on the scaffold and that no one else did, that appellant's foreman, Mr. Henderson, was not in the tile setting department and had nothing to do with directing the men in that work as he understood it, but was in the concrete department overseeing the work there and that he never saw any one but Mueller directing the tile setting and the men engaged therein. The witness says he helped to place the tile on the scaffold and told Mueller they were placing too many upon it, but Mueller replied he was doing the job and told witness to mind his own business. Phillip Reitz testified he was employed at the building and heard Mueller give orders to the tile setters. Appellee testified he was hired by Mueller, that Mueller was foreman of the tile setters and that he received instructions from him the two days he worked there before his injury and that he went upon the scaffold the morning of the accident at his direction. For appellant, Sidney G. Henderson testified that he was appellant's foreman in charge of the construction of the building, that he hired and discharged the men and kept their time and looked after the work in general. He testified Mueller was a tile setter, that he gave him no authority to direct or superintend the men at work with him any more than any other tile setter. G. A. Schillinger testified he was president of appellant and manager of the affairs of his company, that he em-

ployed Henderson as foreman of the work of constructing the building and that he had charge of the job. He further testified he put Mueller to work on the building and gave him no authority to hire or discharge men or to superintend the work.

Whatever may have been the purpose and intention of appellant in placing Henderson in general charge of the work, the proof shows he was not himself a tile setter or brick mason, but his special line was concrete work, and that Mueller, who was a tile setter and who was engaged in the work there and had been for some time when appellee began work, did direct the men engaged in that work, cannot be successfully controverted. That Henderson must have known Muller was assuming to exercise authority over the men engaged in building the wall is shown by the witness Trumbull who testified that not a great while before the accident happened, Henderson and Mueller had a difficulty about the control of some man and Mueller told Henderson he was not his boss, that he, Mueller, "was sent here to overstruct this work." Under all this testimony the court would not have been justified in holding as a matter of law that Mueller and appellee were fellow-servants, if liability had been dependent upon that question alone. Where there is evidence tending to prove plaintiff's cause of action the question should be submitted to the jury for determination. Ill. Southern Ry. v. Marshall, 210 Ill. 562, and cases there cited.

It is not denied by appellant that the scaffold was defective in construction on account of the manner in which the legs of the two wooden horses were spliced and that it was the giving way of these that resulted in appellee's injury, but, as before stated, the contention of appellant is that the overloading of the scaffold was the proximate cause of its falling and not the defective construction. The splicing of the wooden horses was not the work of the tile setters or the helpers, but was done by a carpenter. Appellant owed ap-

pellee the duty of using reasonable care to furnish him a safe place to work, and if its failure to exercise such care caused the injury without the fault or negligence of appellee, the liability would be established, and such liability cannot be escaped by the master having delegated the performance of that duty to another person, who may for some purposes be a fellow-servant of the party injured. Metcalf Co. v. Nystedt, 203 Ill. 333; C. & A. R. R. Co. v. Maroney, 170 Ill. 520; Spring Valley Coal Company v. Rowatt, 196 Ill. 156.

The jury found in answer to a special interrogatory submitted by appellant that the proximate cause of appellee's injuries was not the overloading of the scaffold. Inasmuch as the scaffold fell because of the splices giving way and not on account of any other defect of the structure, it is reasonable to conclude that if the legs of the wooden horses had been long enough without splicing or if the splicing had been done in a more careful and thorough manner there would have been no fall.

Doubtless if there had been no tile or other weighty material placed on the scaffold it would not have fallen, so that while it is true there would have been no fall had it not been for the heavy weight placed on the scaffold, it is also true there would have been no fall had there been no defective construction. Appellant insists that the special finding of the jury is contrary to the weight of the evidence and that Wolff Mfg. Co. v. Wilson, 152 Ill. 9, is conclusive of this question. In that case a heavy iron post used as a barber sign had been erected near the outer edge of the sidewalk without having been very securely fastened. Eighteen months after the post had been thus placed, a driver of one of appellant's wagons, in backing up to the sidewalk with a heavy load, struck the post, knocking it down and injuring a passer-by. Suit was brought against Wolff Mfg. Co., employer of the driver, and a recovery had which was sustained by the Appellate

and Supreme Courts. One of the defenses interposed was that the proximate cause of the injury was the defective manner in which the post had been fastened, but the Supreme Court held that the manner in which the post stood on the sidewalk was not in itself dangerous, that the natural and probable result of so placing it was that it would remain there, and that but for the intervention of a new force sufficient to overthrow it no injury would have resulted. We think there is a wide distinction between that case and this one. In that case the pole was intended for no other use or purpose than to stand on the sidewalk as a sign and was not intended to withstand a force such as a heavily loaded wagon backing against it. In this case the scaffold was constructed and erected for the very uses it was being put to when the accident happened, and while the proof shows it was supporting a heavy load it is evident it would have borne it but for the defective construction.

It is contended also that the dangerous condition of the scaffold including its construction and being overloaded was obvious and apparent to appellee and every one else working there and that in attempting to use it he assumed the risk of being injured thereby. We cannot agree with this position of appellant. As we understand the evidence, appellee was not present when the splicing was done and the scaffold placed along the wall where it stood when the accident happened, nor when the load was placed thereon. When he arrived at the building the morning of the injury he went at once behind some object, changed his clothes and following the direction of Mueller went immediately upon the scaffold which at once fell. Although appellee says he looked at the scaffolding before he went upon it, it is apparent he could not in the short time that elapsed after he arrived at the building before doing so have had much opportunity to have observed either its defective construction or the weight of the load upon it. The defects were of a character

not readily observable and its position against the wall was such that one standing on the floor could not easily see the amount of the material on it. The question whether appellee's injury resulted from an assumed risk of his employment was properly submitted to the jury as a question of fact, and in our opinion we would not be justified in disturbing their finding and the judgment rendered thereon. Himrod Coal Co. v. Clark, 197 Ill. 514; City of LaSalle v. Kostka, 190 Ill. 130; Ehlen v. O'Donnell, 205 Ill. 38.

The second count of the declaration avers that the fall of the scaffold was caused by its being negligently and carelessly overloaded by agents, servants and employees of appellant, but does not aver they were not fellow-servants of appellee. On appellee's motion the court gave to the jury the following instruction:

"If the jury believe from the evidence that the plaintiff has proved the allegations contained in his original declaration, and the additional counts thereto, or any one of said counts, by a preponderance of evidence, and if the jury believes from the evidence that the plaintiff was injured as alleged in such count or counts, and if you believe from the evidence that the plaintiff, at the time of such injury, if any, was in the exercise of reasonable care for his own safety, and if you further believe from the evidence such injury, if proved, was caused by or through the negligence of the defendant as alleged in the same count or counts of the declaration, and if you believe from the evidence that said injury, if any, was not the result of a risk assumed by the plaintiff, then the plaintiff is entitled to recover such damages as you may believe from the evidence will compensate him for the injury so sustained."

It is urged that as said second count did not state a cause of action and was so defective that it could not be aided by verdict, the instruction referred to is reversible error. The jury having found specially that

Schillinger Bros. Co. v. Smith.

overloading the scaffold was not the proximate cause of the injury, it would seem clear the general verdict was not based on that count. The effect of the special finding was that defendant was not guilty under the second count. The instruction was therefore harmless, as the jury must have found for appellee under other counts. The general verdict may be aided and irregularities cured by special findings. 29 Am. & Eng. Ency. of Law, 2nd ed., 1034, note 6.

It is also urged that the court erroneously permitted appellee to introduce evidence as to the construction of the scaffold and the material used therein. Such testimony was held competent in Jenks v. Thompson, 179 N. Y. Court of Appeals, 20. It is also claimed the court erred in permitting the witness Trumbull to testify that Mueller was boss. It is true the witness did speak of him as "boss", but he testified fully as to the acts and conduct of Mueller with reference to the work and the men engaged with him therein which led him to call him boss, and as the jury had all these facts before them, we do not think the mere fact that the witness called him "boss" in his testimony worked any harm or prejudice to appellant.

Lastly, it is contended the verdict is excessive. The evidence shows appellee's arm was broken and that he was otherwise painfully injured by the fall. It also tends to show that Bright's disease with which he has been afflicted since the accident, resulted from the injuries then sustained. We are unable to say the damages are so clearly excessive as to call for a reversal of this judgment. For that reason, and believing there is no reversible error in this record the judgment is affirmed.

*Affirmed.*

Mr. Justice Dibell, having tried this case in the court below, took no part in its consideration here.