# Spring Valley Coal Co. v. John Rowatt.

1. MINES AND MINING—*Duty of Mining Companies in Regard to Passageways.*—Where a coal mining company has received notice that one of its passageways communicating with the escapement shaft or place of exit from the main hauling ways is under five feet in height, as required by statute, it is not entitled to a reasonable time within which to put such passageway in the condition required, and should not allow any one to work in such passageway at the place where it is out of condition until such company has received a report from its mine examiner that such passageway is in the condition required by law.

2. SAME—*Duty of Making an Examination Each Morning.*—Under the statute, the duty of making an examination each morning and having a written report made, is cast upon the proprietor of the mine, and the miners have a right to act upon the theory that such proprietor has complied with the law.

3. MINE EXAMINERS—*Use of Printed Blanks in Making Reports Not Commended.*—It is manifest that where a mine examiner, in making up his report, finds a favorable statement laid before him, in printed form, such form has a tendency to induce him to feel that the making of the report is a perfunctory matter, and such a method is one that can not be approved, even though technically it may be a compliance with the statute.

4. ORDINARY CARE—*Where the Negligence Complained of is Willful.*—Where the negligence of the defendant is willful, it is immaterial whether the plaintiff was or was not, at the time of the accident, in the exercise of ordinary care.

**Trespass on the Case,** for injuries under the miners act. Appeal from the Circuit Court of Bureau County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

ALFRED R. GREENWOOD, attorney for appellant.

J. L. MURPHY, attorney for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

This is an action to recover damages for personal injuries suffered by appellee. The declaration charges that the appellant, a coal mining company in the State of Illinois, did not maintain its roadways and passageways communicating with its escapement shaft wherein mules were being driven, and the cars were being hauled, so that the same

should not become obstructed, unsafe or dangerous to the driver, and did not keep the bottom, wall, roof and sides thereof free and clear of dangerous obstructions, low and confined places and other dangerous conditions, so that drivers might pass and ride along the same, conducting mules and cars, without coming in contact with or being borne violently against or getting caught or crushed in any such obstruction, low or narrow place, or other impediment of said roadways, and did not keep said roadways and passageways of the height and width of five feet, and did not cause the said mine to be examined on the morning of the accident by a duly authorized agent of the appellant in determining whether there were any obstructions or impediments to certain roadways, or other dangerous conditions, and permitted the appellee and other persons to enter into said mine for the purpose of going upon their employment therein, without such examination having been made, and without such duly authorized examiner having reported all conditions safe for beginning work, and without the record of such examination having been made, but therein made default, contrary to the law and the statute in such case made and provided, and also averred that appellant had due notice of the aforesaid dangerous condition of said roadway.

It appeared upon the trial that appellee, a coal miner, had, some time prior to the accident, discovered a low and dangerous place in one of the passageways communicating with the escapement shaft, and had reported the same to the appellant and been assured that it should be fixed. That upon the morning of the accident he took with him, as a driver of the mule drawing the car loaded with coal which he was in charge of, a boy whom appellant claims was not in its employ, and whom it is insisted appellee had no right to have put in charge of said mule. It did not appear, however, that the accident was in any way or wise caused by anything done or omitted by the driver of the mule.

The passageway through which the cars went which appel-

lee was in charge of at the time of the accident, it is very clear, was a passageway communicating with the escapement shaft or places of exit from main hauling-ways to the escapement shaft, and was not at the time of the accident, at the place where appellee was injured, five feet in height.

Counsel for appellant in his argument says:

"It is well known that in coal mines the great weight above is constantly settling, or squeezing, as it is called, and a force of men is constantly required to keep roadways and passageways cleaned up; and, whereas, in this case, it is claimed that appellant had notice of the condition of the entry where appellee worked, and even if appellant's servants had not acted promptly and cleaned the place up at once, it was entitled to reasonable notice and a reasonable time in which to fix it. In this case it did more. The employes fixed it immediately when their attention was called to it on Friday before the accident, Rowatt assisting. He says he got hurt there on the Saturday following; but it was not the rule, and the attention of appellant was not called to the matter again."

We do not think that after notice received by a coal company that one of its passageways communicating with the escapement shaft or places of exit from main hauling-ways is not five feet in height, it is entitled under the statute to a reasonable time within which to put such passageway in the condition which the statute requires. That is to say, if the defendant received notice on Friday that a passageway was not, as required by the statute, five feet in height, it should not have allowed any one to work in such passageway at the place where it was out of order until it had received a report that such passageway was in the condition required by law.

Section 4 of the act of 1895 provides:

"All mines in which men are employed shall be examined every morning by a duly authorized agent of the proprietor to determine whether there are    *    *    *    obstructions to roadways or any other dangerous condition, and no person shall be allowed to enter the mine until such examiner shall have reported all of the conditions safe for beginning work. Such examiner shall make a daily record of the condition of the mine in a book kept for that pur-

pose, which shall be accessible at all times for examination by the men employed in and. about the mine, and by the inspector."

Having been informed on Friday of the dangerous condition of one of the passageways communicating with the places of exit from main hauling-ways to the escapement shaft, it was a willful neglect of duty and violation of the statute for the defendant, on Tuesday prior to having received the report as to the condition of such passageway, provided by the statute, to have allowed appellee to have gone to work as it did.

In respect to the matters concerning which the statute laid upon the proprietors of mines a duty, the defendant was not entitled to notice, reasonable or otherwise, of the condition of its mine. The statute, section 4, Hurd's compilation of 1895, provided that:

"All mines in which men are employed shall be examined every morning by a duly authorized agent of the proprietor to determine whether   *   *   *   there are obstructions to roadways, or any other dangerous conditions, and no person shall be allowed to enter the mine until such examiner shall have reported all the conditions safe for beginning work. Such examiner shall make a daily record of the condition of the mine in a book kept for that purpose, which shall be accessible at all times for examinations by the men employed about the mine and for the inspector."

Mr. Henry Shaw was at that time the mine examiner for the defendant; upon the trial, being called by it, he testified:

"I made an examination. I had company men to see the entries was all clean on Sunday night. Sunday night we sent men to see all the entries was clean. That was the last time I was out to that entry before Rowatt got hurt. I was through that entry into the sixth shed; it was on Sunday night, the 20th. This accident happened Tuesday. I know I was through there on Sunday night, but I would not be sure whether Sunday was the 20th. This accident happened on Tuesday. I don't know the place where Rowatt was hurt. I was through that entry where you say he was hurt."

Such examination was not a compliance with the peremptory command of the statute which required an examination

every morning. The defendant introduced the following report which it is claimed was in compliance with the mining laws, and which its examiner, Mr. Shaw, testified he signed the 21st, about seven o'clock in the morning.

### "DAILY MINING INSPECTION REPORT.

### Date March 21st, 1899.

I hereby certify that in accordance with section 4 of the mining laws I have this day duly examined this mine before the commencement of work therein, and find the same free from dangerous gases, the air current circulating properly, and the entries in a safe condition."

It is perhaps the case that the examiner by the expression " entries " meant the roadways mentioned in the statute, but he failed to report that all the conditions concerning which the statute requires an examination and report to be made, were safe for beginning work. A report as to cages, gates, hoisting rope, etc., was made by " W. Janofski, top man," and a report was also made as to the external parts of the engines, machinery and boiler fittings by " Jno. Paden, engineer." These were all the reports made. The report of the mine examiner was made in a printed book with blanks prepared for that purpose, so that all the examiner had to do, if he found everything as the statute required, was to fill in the date and sign his name. While it may be that if the blank had contained a clear and positive statement that the conditions required by the statute and concerning which the report was to be made, existed, his filling in the date and signing his name to the blank would have constituted a technical compliance with the statute, so far as making a report was concerned, it is manifest that where an examiner in making up the report finds a favorable statement laid before him in printed form, such blank has a tendency to induce him to feel that the making of the report is a perfunctory matter, and such method is one that can not be approved, even though technically it may be a compliance with the statute; but the failure to report that all of the conditions were safe for beginning work was a failure to comply with the statute.

The Supreme Court, in Royce v. Pawnee Coal Company, 184 Ill. 402, on page 415, said:

"It is true that the plaintiff's own testimony shows that an examination was made, but it is not true that with the making of that examination the duties of appellant ceased. The law goes further, and provides that no person shall be allowed to enter the mine until the examiner shall have reported all the conditions safe for beginning work. The report itself did not state that all of the conditions were safe for beginning work, and taking the evidence for the plaintiff as true, as we must for the purposes of this discussion, the appellant had actual notice of the unsafe condition of this entry, and further he (appellee) had the right to assume that the appellant would comply with the statutory requirement, and was not bound to ascertain each morning whether it was doing so."

So far as appears, there was a failure by appellant to examine this mine as the statute required, both on Monday and Tuesday morning. Such failure was a willful violation of the statute, and it is at least fair to appellant to assume that had such examination been made, the injury to appellant, caused by the unsafe condition of one of the passageways, would not have happened. The negligence of appellant being willful it is immaterial whether the appellee was, at the time of the accident, in the exercise of ordinary care. Carterville Coal Co. v. Abbott, 181 Ill. 495, 502; Pawnee Coal Co. v. Royce, *supra.*

There is some evidence to the effect that appellee, after the injury, stated that the accident was his own fault; whether he so stated or not is at the present time of no consequence. Under the statute the duty of making each morning an examination, and having a written report made, is cast upon the proprietor of the mine, and miners have a right to act upon the theory that such proprietor has complied with the law. Neither appellee nor any other miner was bound to see either that an examination or a report had been made. The evidence was clear that the passageway at the place where appellee was injured was not, as the statute required, five feet high; while such passageway was clearly, under the testimony and the map of the mine

introduced in evidence by the appellant, a passageway communicating with the escapement shaft, or one of the places of exit from the main hauling-ways to the escapement shaft. The negligence of the appellant having been willful, the instructions offered by it, which the court refused to give, were by it properly so treated.

Finding no error in this record warranting a reversal the judgment of the Circuit Court is affirmed.