DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1907.

---

## Marquette Third Vein Coal Company v. Hugh Allison.

### Gen. No. 4,561.

1. STATUTES—*canon of construction.* One of the rules for determining the legislative intention in construing statutes is to consider the evil sought to be remedied and the object sought to be attained.

2. CONTRIBUTORY NEGLIGENCE—*when no defense.* Contributory negligence is no defense to an action instituted under the Mines and Miners Act predicated upon a wilful violation thereof.

3. MINES AND MINERS ACT—*when mine examination not compliance with.* Where a mine examiner does not make a report specifying the dangers of the mine examined, it is not a compliance with the statute.

4. ABSTRACT—*when insufficient.* An abstract which is a mere index and which does not show which party moved for a new trial and excepted to the denial thereof, is insufficient.

Action in case for personal injuries. Appeal from the Circuit Court of Bureau county; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed March 13, 1907.

GEORGE S. SKINNER, C. N. HOLLERICH and DUNCAN, DOYLE & O'CONOR, for appellant.

J. L. MURPHY, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Upon this rehearing we adopt the statement of the case, and the discussion of the proofs under the first and third counts of the declaration, contained in the original opinion of this court by Mr. Justice Farmer, which, with slight changes, is as follows:

"Appellee was injured while riding upon a car of coal drawn by a mule in appellant's mine, and brought this suit to recover damages therefor. He obtained a verdict and a judgment for $275, and defendant below has brought this case here by appeal. Appellee has moved to strike appellant's briefs and abstracts from the files on the alleged ground that appellant has been dissolved as a corporation and a receiver appointed for it who is not a party here. The papers filed by appellee in support of this motion do not show a dissolution of the corporation, but only show the appointment and qualification of a receiver for it. This appeal had been perfected, the record filed here and the case continued once by stipulation of the parties, before the appointment of a receiver. It does not appear that appellant has ever been dissolved. It is still an existing corporation, and the motion to strike its brief and abstracts from the files is denied.

"The first count of the declaration charges appellant with negligence in failing to furnish appellee with a reasonably safe place in which to work. The second count charges appellant with a violation of its statutory duty to have its mine examined each morning, before the men were permitted to enter it to work, by a competent mine examiner, to ascertain whether conditions were safe for men to enter to perform their work. The third count charges a violation by appellant of its statutory duty to keep and maintain all passageways communicating with the escapement shaft or place of exit from the main hauling ways to said place of exit, free of obstructions and at least

five feet wide and five feet high. The fourth count charges a violation of the statute requiring appellant to keep a daily record of the mine and the morning's examinations, made by the examiner, in a book provided for that purpose, and to preserve the book at the office of the mine for the information of all concerned, and to permit no person to enter the mine to work therein, except under the direction of the mine manager, until all conditions had been made safe.

"There are two main entries from the bottom of appellant's shaft, one leading north and the other south. The eighth east entry is turned off the main north near a half mile from the bottom of the shaft. The eighth east runs in a northeasterly direction, and the face of the coal in it is about seven hundred feet from the main north. Rooms were turned off the eighth east, and it was at the place where the switch turned into the fifth room, the one nearest to the face of the coal, that the injury occurred, and within about fifty feet of the face. At the time of the accident no coal was being taken from room 1 off this eighth east entry. The coal mined from the other four rooms was hauled in cars drawn by a mule along said eighth east entry to the main north, and thence to the bottom of the shaft. At the point where the injury occurred the road was about eight feet wide, and the roof at the lowest place was three feet nine inches to three feet eleven inches above the top of the rail on which the cars ran. The rails were two inches high, and they were laid on ties about two inches higher than the surface of the ground. An empty car was thirty inches high and three feet and ten inches wide, at the top. In loading the custom was, in such hauling ways as this car had to pass through, to pile the load from ten to fourteen inches above the top of the car so that an average load was about 2,600 pounds. A place was left in front for the driver's seat. Appellee had been driving in the entry where he was injured for about two weeks. Prior to that time he was driving a few days in an-

other entry, and for a number of years he had worked in the mine at other kinds of employment. During the time he was driving in the entry where injured, he passed through the place at which he was injured each time he went in with an empty car, and again on going out with a loaded car. One end of a chain was fastened to the car, and the mule was hitched to the other end of the chain and, when pulling the load, was about four feet from the end of the car. A number of methods were adopted by drivers in passing through low places. One method was to place the left foot on the rail in front of the car, the right foot on the bumper and with the right hand hold on to a bar, which crosses the front end of the top of the box. This was called "sliding the rail." Another method was to walk in the space between the mule and the car, and still another to walk in the rear of the car. Appellee testified that as he approached the place where he was injured, he got partially off his seat, placed his right foot on the bumper, but was not sure where he placed his left foot; that he held on to the car with his right arm, letting his left hang free, and got down as low as he could; that his shoulder was caught between the roof and the top of the car of coal, dislocating his shoulder and otherwise bruising and injuring him. He was, however, completely recovered; the physician who treated him testifying that his shoulder was in its normal condition, and that no bad results followed from the injury. The only complaint made by appellee of the roof at the place where the injury occurred is that it was too low. It is not contended that there was any loose overhanging rock in the roof, but on the contrary the evidence shows it was solid. The vein of coal in appellant's mine was from three to three and one-half feet thick, and in taking it out the method was to take out six or eight inches of clay below the coal vein and about two feet of rock above it. With the rock the miners built walls on each side of the entry or room to support the roof. This method is called

'the long wall' system of mining. As the work is pro-
jected ahead, the roof settles and gives less space
between it and the bottom. To keep the roadway open
a sufficient height to haul coal the roof is 'brushed'
from time to time. This settling, or 'squeeze,' as it is
called by the miners, is always greater nearer the face
of the coal where the work is freshest, and becomes
less the further out they get into the old work. There
is no proof that at the place where the injury occurred
there had been any settling of the roof during the time
appellee was driving there. The condition of the road
and the roof at that place was well known to appellee,
as he made from sixteen to twenty trips through there
every day, for the two weeks he was driving at that
place. He testified, however, that he complained to
the assistant mine manager of appellant, and asked
him to have the road brushed and put in better shape,
and that the assistant manager promised to do so.
He says this complaint was made the day he was driv-
ing in the eighth east entry. He also testified the
worst place was at the second switch, and that that
had been repaired and put in good shape the third
morning when he went in there to work. This switch,
as we understand it, was 150 feet from the place where
the injury occurred, and toward the main north entry.
He testified he continued complaining, and that em-
ployes of appellant went back and started at the first
switch, and 'brushed' to the second, and then from the
second to the third, and that that was as far as they
had gone with their work toward where the injury oc-
cured up to the time of the injury. Patrick Flood, the
assistant mine manager, denied that any complaint
was ever made to him by appellee about the condition
of the roof or its height. This is all the testimony
there was on this question. If there had been no com-
plaint made by appellee and no promises to repair,
then clearly there could be no right of recovery under
the first count in the declaration, but under all the

proof the court was warranted in submitting that count to the jury to determine whether appellee assumed the risk of injury, or whether he was guilty of contributory negligence in continuing to work with knowledge of the condition.

\*     \*     \*     \*     \*     \*

"The third count presents for construction a clause in paragraph '(c)' of section 3 of the act of 1899 in relation to coal mines, which is not altogether free from difficulty. The clause referred to reads as follows: 'and all passageways communicating with the escapement shaft or place of exit, from the main hauling ways to said place of exit, shall be maintained free of obstruction at least five feet high and five feet wide.' Appellant's escapement shaft was in the neighborhood of one hundred feet east of its hoisting shaft. It was reached by a passageway leading off the main entry somewhere near one hundred feet south of the hoisting shaft, and running thence east eighty or ninety feet, and thence north one hundred feet to the escapement shaft. The main south entry is connected with the main north entry by what is called the main way at the bottom of the shaft. We construe 'escapement shaft or place of exit' in this case to mean one and the same thing, that is, the escapement shaft. Was, then, the eighth east off the main north entry a passageway communicating with the escapement shaft from the main hauling way? If it was, then the statute required it to be maintained free of obstructions and at least five feet high and five feet wide. As we read and understand said provision of the statute, it will not bear the construction sought to be placed upon it by counsel for appellee. The passageways required to be kept five feet high, five feet wide and free from obstructions, are those communicating with the escapement *from* the main hauling ways. The main hauling way, with which the passageway to the escapement shaft or place of exit communicates, is the main south entry. While the eighth east off the main north

entry communicates with the main north, and that with the main south entry, and the main south with the passageway communicating with the escapement shaft, in our opinion it was never intended that the statute should apply to passageways where the communication with the escapement shaft is so remote and indirect. If it does include such passageways as the one in which appellee was injured, then we cannot conceive of one to which it would not apply, and if it had been the legislative intent that the act should apply to all passageways it is fair to presume it would have said so instead of limiting its application to 'passageways communicating with the escapement shaft or place of exit from the main hauling ways to said place of exit.' It will be observed that the passageways required by the statute to be five feet wide and five feet high are those communicating with the escapement shaft or place of exit 'from main hauling ways.' A passageway leading indirectly through other passageways to the escapement shaft is not, in our judgment, comprehended in the language of the statute. The act is limited to passageways '*from* the main hauling ways' and we think does not include all passageways leading *to* the main hauling ways, through which the passageway to the escapement shaft might be reached. The passageway leading from a main hauling way is not intended for use in hauling coal in going to and from their places of work by the miners. Its purpose is to afford a means of escape when exit from the mine could not be made by means of the usual method by way of the hoisting shaft. In time of accident or great excitement a large number of miners might have to use this passageway, and it is therefore very necessary that it should be free of obstructions, and wide enough and high enough to allow them to pass freely and rapidly. One of the rules for determining the legislative intention in construing statutes is to consider the evil sought to be remedied and the object sought to be attained. Hogan v. Akin, 181 Ill. 448;

Soby v. People, 134 Ill. 66; Bobel v. People, 173 Ill. 19. Our attention is called to Spring Valley Coal Co. v. Rowatt, 196 Ill. 156, and 96 Ill. App. 248. The opinion of the Appellate Court in that case does not set out the evidence, nor are we able to tell from the portion of it set out in the opinion of the Supreme Court just where the injury occurred, nor how the place at which the injury occurred communicated with the escapement shaft or place of exit. Besides, the present statute was not in force at the time Rowatt received his injury, and while the phraseology is not greatly changed by the act of 1899, it is sufficiently changed, in our opinion, to make it clear that it was not intended to apply to such passageways as the one in which appellee was injured. We therefore conclude that no recovery could be had under said third count."

The second count is under portions of paragraph "(a)" of section 18 of the act of 1899, which requires a mine examiner at all mines, whose duty, among other things, it shall be to visit the mine before the men are permitted to enter it; to inspect all places where men are expected to pass or to work; to observe whether there are any recent falls or obstructions in rooms or roadways, or accumulations of gas or other unsafe conditions; and, as evidence of his examination of all working places, to inscribe on the walls of each, with chalk, the month and the day of the month of his visit. The second count described at length the mine and the manner in which work was done therein, and the work at which appellee was engaged, and the duty of appellant to have a mine examiner, and the duties to be performed by the mine examiner, and charged that appellant knowingly and wilfully failed, at and before the time of the injury to appellee, to employ a mine examiner and necessary assistants, or any one of them, and knowingly and wilfully failed to cause the mine and all places wherein men are expected to work or to pass (including the low and dangerous places through

which appellee was to pass with loads of coal), to be so examined and inspected before the workmen were permitted to enter it, though on said roadway where appellee and others had to pass and work, known as eighth east off the straight north road and at the junction of said eighth east with the fifth or last entry branching therefrom to the north, there was a place in the roof of the roadway so low as to project downward into the road within four feet of the road bed, and so low that it was impossible for a driver riding his trip to pass it without stooping down between the car and the mule so that his head and body would be below the level of the top of the load; and that by means thereof appellee was unavoidably caught and injured while passing the same and while in the act of stooping down to avoid said low place. Appellee called appellant's mine examiner and proved by him that he knew he examined the mine the night before the day on which appellee was injured from the fact that his name was signed to a report for that morning in the examiner's record, but that he had no independent recollection of the examination, or what he examined, or where he began or finished the examination; nor did he know the time when or place where appellee was hurt, nor did he know that he was hurt till this suit was brought. He was asked to state what he did in making an examination, and he answered that he travelled the main haul ways, saw that the places were all in good condition, and that the air was travelling in its proper course, and saw if there were any falls and if so reported them, and that he travelled the rooms. On cross-examination in behalf of his employer, he was asked if he travelled the eighth east off the main north that night, and he answered that he did, and that he knew it was all right. On re-direct examination by appellee he answered that he remembered it because he had to travel every road every night; that because his practice was to travel every road, room and entry, in the mine each night he knew he must have travelled

it that night. He testified that he was also night boss, and that a gang of men working at night were under his direction and were visited by him. When after-wards called by appellant he testified that there were only two main haul ways in the mine,—the main north and the main south. He then testified that there was nothing in an entry way three feet and nine inches high to prevent the successful operation of the mine, if the mule was small enough to go through, and that the driver had to take those chances; that that was in the business; and when his statement that the driver had to take the chances was excluded, he stated that there was nothing in such a condition of the entry way to prevent the successful operation of the mine for the driver, with proper caution. He also testified that he did not have occasion to mark the place where appellee said he was hurt at any time during the month in which he was hurt. As appellee was injured on May 27th, the examiner had not marked the place during his examinations in the twenty-seven preceding nights. Other proof showed that during the two weeks appellee had been driving in that entry he made repeated complaint of the roof and had told the assistant mine manager that it had to be brushed or fixed; that it might be all right for an experienced driver, but that he was a green horn at driving and could not pull coal there till it was brushed or repaired, and that the assistant manager replied that he would have the night shift repair it at once; that appellant did repair the worst place and appellee complained again, and that further brushing was done, and that appellant had been brushing the night before appellee was hurt, but had not reached the place where he was injured. It was also shown that there is no light in the mine except the lamp on the cap of each person, and that that light reveals an object only within about fifteen feet. There was in evidence a map of the mine, drawn to a scale, and showing the various roadways and entries, cross cuts and rooms. Appellee asserts that the ap-

Marquette Third Vein Coal Co. v. Allison.

plication of this scale to the ways shown upon the map will establish that, taking into account the places where the mine examiner would have to double back and travel the same road twice, he would have to travel about thirty-eight miles each night to cover all the ways and visit all the places where men worked in this mine; and appellee argues that this could not be done, and that from its impracticability, the lack of any personal recollection by the examiner that he visited this entry way the night before appellee was hurt, and his failure to make any marks at this place which the assistant mine manager conceded had for two weeks needed brushing and repairing, the jury had a right to believe the examiner did not visit that entry that night or for some considerable time before that. Appellant contends that a reasonable scaling of the ways upon the map will show the distance necessary to be travelled to inspect all parts of the mine was a little over six and a half miles. We think appellee's estimate is much nearer the fact. In this state of the proof appellee had a right to go to the jury under the second count, and to have instructions based thereon.

The fourth count is based upon parts of paragraphs "(b)" and "(c)" of said section 18, which require that no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe; and which require the mine examiner to make a daily record of the conditions of the mine, as he has found it, in a book kept in the office for the information of all persons interested, which record must be made each morning before the miners are permitted to descend into the mine. The fourth count charged appellant with a wilful violation of these provisions, and with neglecting to cause such a record to be made and kept at the office or at any other accessible place, and with permitting appellee and others to enter and remain and work in the mine, not under the direction of the mine manager, notwithstanding dangerous conditions

existing in said entry where appellee was injured, and
that by means thereof appellee was injured. The
proof showed two, if not three, violations of these re-
quirements. The book was a set of printed reports,
and all the mine manager usually did when he came
up in the morning was to date and sign the printed
report. Once in a great while he would add something
to the printed matter, but there was nothing written
but date and signature on the morning preceding ap-
pellee's injury and for a month before. This was not a
compliance with the law. Henrietta Coal Co. v. Mar-
tin, 221 Ill. 460. At that time this book was not kept
in the office as the statute required, but in the engine
room, a small room not practically accessible to the
four hundred miners, drivers and other laborers, who
daily went down into this mine. If the jury concluded
the conditions existing in the eighth east entry were
dangerous that night, then appellant further violated
the statute in the failure of the mine examiner to make
a record of those conditions in that book that morning
and before permitting appellee and others to go down
into the mine. It was therefore proper to instruct the
jury under the fourth count.

We conclude that the proof warranted a verdict for
appellee. It may well be that if the examiner had made
and placed in the office a written report specifying the
dangers at that place, the mine manager would not have
permitted appellee to descend into the mine that morn-
ing until that condition had been removed. As the
jury were warranted in finding these acts and omis-
sions wilful violations of the statute, as the word "wil-
ful" in this statute has frequently been defined by our
courts, the contributory negligence of appellee, if any,
was not a defense, except to the first count. Keeping
that in view, no error appears in the rulings of the court
upon the instructions, so far as they are discussed by
appellant. It may be that the court might well have
refused the very general fifth instruction requested by
appellee, based on the third count, and might properly

have struck out of appellee's first instruction the reference to the third count; but the trial was upon that as well as the other counts, and these instructions did not mistate any legal principle. Appellant could have asked an instruction directed solely to this third count, and which would have given the jury the law upon that subject; but it did not see fit to do so.

To correct a too prevalent omission, we call attention to the fact that the abstract of the bill of exceptions does not show which party moved for a new trial and excepted to the denial of that motion. This abstract is a mere index of all that occurred after action upon the instructions. This is insufficient. Appellee sued for $5,000 and recovered but $275, and for all that is shown in that part of the abstract referred to it might have been the appellee who made that motion and preserved that exception.

The judgment is affirmed.

*Affirmed.*